Frank HAIR, Appellant,

v.

UNITED STATES of America,
Appellee.

John I. BURROUGHS, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 15878, 15890.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 3, 1961.

Decided March 16, 1961.

Petition for Rehearing Denied
April 10, 1961.

Wilbur K. Miller, Chief Judge, dissented in part.

Mr. Mozart G. Ratner, Washington, D. C. (appointed by this Court) with whom Mr. Joseph L. Sax, Washington, D. C., was on the brief for appellant in No. 15878.

Mr. Curtis P. Mitchell, Washington, D. C. (appointed by the District Court) for appellant in No. 15890.

Mr. John R. Schmertz, Jr., Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellee in No. 15878.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

Our appellants, Hair and Burroughs, were charged and convicted of housebreaking [1] and robbery,[2] and Burroughs was also charged and convicted of rape.[3] Their principal contention on these appeals is that the District Court erred in refusing to exclude certain evidence obtained by officers of the Metropolitan Police.

The police officers testified as follows: On January 4, 1960, they were called to investigate a report of a housebreaking, robbery and rape. The victim told them that three young men, each masked and armed, had entered her house, stolen a large amount of cash and a quantity of personal property, and that one of them had raped her. Some time between 5:00 and 9:00 p. m. that evening, from pictures at police headquarters, she identified Burroughs as her assailant and Hair as one of the robbers. She tentatively identified Reese Blakeney as the third robber.[4]

At about 9:50 that evening, four officers converged upon Hair's residence. One officer was stationed at the back of the house to guard against escape, and the other three approached the front gate. Although they had neither an arrest nor a search warrant, their admitted purpose was to arrest Hair who, they had reason to believe, was at home.[5] When they were approximately seven or eight feet from the front door, a man opened the door, began to step out, and then turned and ran up the stairs towards the second floor. The officers, without giving notice of their authority or purpose in seeking entrance, immediately gave chase. They threw open the door, chased him up the stairs, and fired several shots at the man who then dived through the window and eluded the officer stationed behind the house. One of the officers then stated that he had recognized the man as Reese Blakeney whom he knew and whom the victim had identified as one of the robbers. He was subsequently apprehended and so identified by the victim.

While rushing out of Hair's home in pursuit of Blakeney, the officers passed an open door of a room in which they observed several items which fitted the descriptions of the goods stolen in the robbery. Based upon this observation, they procured the search warrant under which these goods were subsequently seized.[6] The trial court denied Hair's pre-trial efforts to suppress this evidence and overruled his objections to their admission at trial.

We shall deal first with appellant Hair's claim that the entry into his home was unlawful. If Hair is correct, the evidence seized under the warrant issued on the basis of observations derived from that entry was erroneously admitted. Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Somer v. United States, 2 Cir., 1943, 138 F.2d 790. Hair contends not only that the initial night-time entry without a warrant was unlawful but also that the manner of entry was illegal under the rule of Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.

1. D.C.Code § 22–1801 (1951).

2. D.C.Code § 22–2901 (1951).

3. D.C.Code § 22–2801 (1951).

4. Blakeney was charged with housebreaking and robbery and tried jointly with appellants. During the trial he withdrew his plea of not guilty and entered a plea of guilty to the robbery charge which was accepted by the trial judge.

5. The Government contended during oral argument that the officers were merely engaged in a "stake-out" of Hair's home for surveillance purposes. However, the officers testified at the hearing on the motion to suppress that they went to Hair's house for the purpose of placing him under immediate arrest.

6. The officers made a second warrantless entry of the Hair dwelling at about 2:00 a. m., on January 5, for the ostensible purpose of arresting Hair. We need not consider the legality of this entry since the Government concedes the validity of the warrant is not dependent upon the second entry, but stands solely on the legality of the initial entry.

2d 1332; and our recent decision in Keiningham v. United States, 109 U.S. App.D.C. 272, 287 F.2d 126. We need not consider whether an entry without a warrant could have been valid since we hold that the manner of entry was illegal in any event and required exclusion of the evidence thereby observed.

■ The Government does not seriously dispute that Miller requires police officers who seek to invade the privacy of an individual's home to announce their authority and their purpose in demanding entrance before "barging in," [7] and that no such announcement was given here. It seeks to justify the absence of announcement, however, on the ground that it would have been a useless gesture because it was a virtual certainty that the officers' purpose was known.

■ In Miller the Supreme Court indicated that "it may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture." 357 U.S. at page 310, 78 S.Ct. at page 1196. But rather than creating a "virtual certainty" of such knowledge, the Court considered the facts in Miller to be ambiguous. Nothing less can be fairly said of the circumstances disclosed by this record. In Miller, Federal officers knocked upon petitioner's door at about three in the morning. When asked who

was there, one officer replied in a low voice, "police." Petitioner then opened the door on an attached chain and asked the officers what they wanted. Before they replied, he attempted to close the door. The officers then ripped the chain off the door and forced their way inside. If the attempted closing of the door after the officers had announced their presence and identity was ambiguous in Miller, Blakeney's opening and closing the door when the officers had made no announcement and were a distance of seven or eight feet away at the time cannot be otherwise characterized.

Nor does the Government's characterization of Blakeney's running up the stairs as flight change the picture. In Williams v. United States, 1960, 107 U.S.App.D.C. 276, 276 F.2d 522, the trial court refused to exclude evidence obtained from a dwelling without announcement of purpose on the ground that the appellant's running upstairs after seeing the officers was evidence of flight and made it virtually certain that further announcement would have been futile. We reversed per curiam citing Miller. Cf. Accarino v. United States, 1949, 85 U.S.App.D.C. 394, 179 F.2d 456.[8]

■ Nor do we think that any claims of necessitious circumstances can justify the officers' entry without announcement in this case. Assuming *arguendo* that the Miller rule admits of such an exception,[9] Accarino v. United States, supra,

7. Keiningham v. United States, 287 F.2d at page 129.

8. Judge Fahy adds: It is of some significance in determining the question of validity of the entrance of the officers without demand and announcement of purpose that they knew the premises belonged to Hair and not to Blakeney, yet no opportunity was given to Hair to respond in any way to a demand and announcement which would have complied with the statute. That the officers knew Blakeney was not the owner of the premises is also a circumstance to be considered in determining whether the officers could be "virtually certain" that a demand and announcement would be useless.

9. It may be doubted whether Miller is susceptible to such an exception. In Accarino v. United States, supra, we declared that, absent a warrant, intrusion into a man's dwelling for purposes of arrest can be justified only by necessities of the moment. We went on to state that, in any event, "before an officer can break open a door to a home, he must make known the cause of his demand for entry." 85 U.S.App.D.C. at page 403, 179 F.2d at page 465.

A survey of recent cases in this court involving the legality of police entries without warrants will indicate that it is a rare case indeed in which the police cannot point to "immediate necessities" as justification for dispensing with what

answers the Government's contention that Blakeney's supposed "flight" necessitated instantaneous action. There, as here, the Government pointed to such conduct as constituting the need for entry without a warrant or announcement. In that case we said the conduct could not be considered flight which justified unannounced and warrantless intrusion since "the suspect had not been arrested, and the officers did not notify him that they wanted to arrest him."[10] No less can be said about Blakeney's conduct.

It may also be noted that Miller and Accarino dealt with forcible "breaking" into a home. The record in this case does not disclose whether the door to Hair's home was locked, closed but unlocked, or merely left ajar. But even if we were to assume that the door was left open, only the sheerest sophistry would describe as "peaceable" the charge of three police officers with drawn weapons across the threshold of a home. As we said in Keiningham, "a person's right to privacy in his home * * * is governed by something more than the fortuitous circumstance of an unlocked door * * *."[11]

■■ Appellant Burroughs contends that his convictions must also be reversed because the illegally obtained evidence was admitted against him as well as Hair. The property seized was not Burroughs', and he had no interest in the premises unlawfully invaded. Ordinarily one seeking to challenge the legality of a search or seizure must establish that he was the victim of the alleged invasion of privacy. Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed. 2d 697. But we read McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, to recognize another ground for exclusion. There, evidence unlawfully seized from McDonald's room was admitted in the trial of McDonald and his co-defendant, Washington. The Court reversed McDonald's conviction and Washington's as well, reasoning that the denial of McDonald's motion to suppress was prejudicial to Washington because, had the motion been granted, the evidence would not have been available for use at the trial.[12] Judge Fahy and the writer are of the opinion that admission of the illegal evidence was sufficiently prejudicial to Burroughs on the housebreaking and robbery charges to warrant reversal of those convictions for a new trial under McDonald.[13]

---

the Government's brief characterizes as "the niceties of usual police procedure." Necessitous circumstances may justify dispensing with a warrant issued upon a magistrate's determination of probable cause. But proper announcement is required where entry is sought under a valid warrant. 18 U.S.C. § 3109 (1958); Keiningham v. United States, supra. Surely less is not to be demanded of an officer seeking entry without a warrant. Of course, we agree with the Government that there may be situations in which express announcement would be futile and even dangerous to the officer. But we think that such cases are only those, unlike this one, in which there exists a virtual certainty that the officer's authority and purpose are already known to the occupant.

10. 85 U.S.App.D.C. at pages 402–403, 179 F.2d at pages 464–465.

11. 287 F.2d at page 130.

12. Compare Anderson v. United States, 1943, 318 U.S. 350, 356, 63 S.Ct. 599, 87 L.Ed. 829. It might be argued that McDonald does not apply where, as here, the unlawfully seized materials cannot be returned to the defendant upon his timely motion to suppress. Such a view may perhaps be implied from the statement in the Supreme Court's opinion that "if the property had been returned to McDonald, it would not have been available for use at the trial [against Washington]." 335 U.S. at page 456, 69 S.Ct. at page 193. We think this implication unsound and do not understand the Supreme Court to have meant McDonald to apply only in those cases in which the property could have been returned rather than suppressed as evidence. For discussion of this aspect of the case, see 1949, 62 Harv.L.Rev. 1229, 1230–31.

13. The present case is unlike Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, in which the illegally

Only the writer would grant Burroughs a new trial on the rape charge. The writer's views are that the illegal evidence had probative value for the rape charge. In instructing the jury on the lack of consent required to convict for rape, the trial judge stated, "You may also consider the circumstances of whether there were two armed confederates of the alleged rapist in the house at the time. * * *" That confederates were present was substantiated by Hair's possession of the stolen goods which were erroneously admitted in evidence. No one can say with certainty that the admission of this evidence was prejudicial to Burroughs, but the risk of prejudice seems sufficiently great to warrant a new trial under McDonald. See Kotteakos v. United States, 1946, 328 U.S. 750, 66 S. Ct. 1239, 90 L.Ed. 1557.

In Judge Fahy's view, however, while the evidence seized was a major aspect of the Government's proof of the housebreaking and robbery, this was not the case with regard to the rape charge. Considering the evidence as a whole, the risk of prejudice arising from the seized evidence he thinks was not sufficient to warrant reversal of that conviction. Since Judge Miller also votes to affirm Burroughs' conviction for rape, that conviction is affirmed.[14] Because the 7 to 21 year sentence for that conviction was imposed to run consecutively after the concurrent sentences for housebreaking and robbery, the District Court will be required to resentence Burroughs.

No. 15878 is reversed and remanded for new trial.

No. 15890 is reversed and remanded for new trial in part; and affirmed in part.

WILBUR K. MILLER, Chief Judge (dissenting in part).

I would affirm the convictions of both Hair and Burroughs on the housebreak-

obtained evidence was submitted only against the victim of the illegal search and seizure and not against his co-defendants. The Supreme Court expressly recognized this distinction in McDonald.

ing and robbery charges, as well as the latter's conviction on the charge of rape. Consequently, I dissent from the foregoing opinion insofar as it reverses the appellants' convictions on the housebreaking and robbery charges.

14. Burroughs urges several independent reasons for reversal of his rape conviction. As to these, we find no error.