664 P.2d 989

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Raymond LOPEZ, Defendant-Appellant.**

No. 5585.

Court of Appeals of New Mexico.

Oct. 19, 1982.

Certiorari Quashed June 6, 1983.

Mary Lou Carson, Tierra Amarilla, for defendant-appellant.

Jeff Bingaman, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of two counts of vehicular homicide pursuant to § 66–8–101(A) and (B), N.M.S.A.1978, defendant appeals. The appeal concerns 1) a search warrant affidavit, 2) exclusion of evidence taken from victims, 3) double jeopardy by virtue of three mistrials, 4) prosecutorial comments, and 5) sentencing. We affirm the conviction, but remand for sentencing.

*Search Warrant Affidavit*

Frank Taylor of the New Mexico State Police filed an affidavit to search a garage located behind a residence for a "Blue Chevy or GMC pickup, possible year 1967–1973, short wheel base with damage to the left front fender and headlight" on the ground that the pickup was material evidence in a criminal prosecution. The affidavit went on to state:

I was told by Al Sanchez, the bartender at the Bear Canyon Dam Bar in Grant

County, New Mexico that two men driving a pickup truck similar to the one above-described had been in his bar on July 1, 1979 at approx. 5:30 P.M. and that he was run out of the bar at approximately 7:00 P.M.

At about 7:30 P.M., july [sic] 1, 1979, I received a call of a fatal hit and run accident on State Road 61, two miles south of intersection of State Road 90 and State Road 61. As I proceeded to the location of the accident, at approx. the City of Rocks on State Road 61, a blue pickup truck came at me and ran me off the road. A styrofoam cooler blew out of the pickup truck at approx. the same location. I checked on my radio and found that the accident involved serious injuries and elected to proceed to the scene of the accident rather than pursue the pickup truck. Upon arriving at the scene, I found two individuals, a man and a woman. The man was already dead and the woman died shortly thereafter. There was one motorcycle upon which they had apparently been riding. At the scene I also found debris in the form of a busted headlamp and the rim that secures the headlamp to a vehicle; chrome trim; and broken pieces of broken amber reflecter, these items having not come from the motorcycle.

An examination of the man's body revealed blue paint chips on the man's arm bone that had been severed and on the flesh and also on the grip of the motorcycle. Paint chips were also recovered from along the roadway where the motorcycle had been hit.

Crime Stoppers received information that two individuals, one a Carl Gray and another man by the name of Ray, who is a Spanish male and fit the description given to me by Mr. Sanchez of the two individuals who had been at his bar. The Crime Stoppers indicated that these two men had been driving a blue pickup truck similar to the one that had almost run me off the road near the City of Rocks and had left the Bear Canyon Dam Bar at approximately 7:00 P.M. on July 1, 1979.

I then proceeded to Deming, New Mexico July 3, 1979 and checked with the local police with the physical description, a description of the truck and the first name "Ray" and was told that Raymond Lopez drove a truck of that description and fit the physical description. I went to the home of Raymond Lopez at 818 East Elm Street in Deming at about 11:45 July 3, 1979 and I went to both the front and back door of the residence and was unable to raise anybody inside. I noticed leaning up against the door of the garage located immediately in the rear of the residence a blue tailgate to a pickup truck similar to the model years that I was looking for. The tailgate had the word "Chevrolet" on it and the color was similar to the paint chips which I had found at the scene of the fatal accident. Through a crack in the door, I was able to see that there was a pickup truck parked in the garage.

A search warrant was issued and the evidence was seized. Defendant's motion to suppress the evidence was denied.

Defendant contends that the affidavit was insufficient for the following reasons: 1) it does not indicate knowledge that the vehicle described in the affidavit was at the scene of the accident and, therefore, cannot be said to be evidence of a crime; 2) the affidavit does not indicate that the blue pickup which ran the affiant off the road was damaged; 3) the information from the bartender does not place defendant at the scene of the accident; 4) the information given by the Crime Stopper's informant indicates no underlying circumstances establishing the basis of informant's conclusion and contains no description of criminal activity; 5) there is nothing in the affidavit showing the Crime Stopper's informant to be credible; 6) the name given by the Crime Stopper's informant is not corroborated any where in the affidavit, and 7) there is nothing in the affidavit showing that criminal evidence could be found at the address stated, as accident related damage is not mentioned to be apparent on the pickup at the residence.

This case is controlled by *State v. Snedeker*, 21 N.M.St.B. Bull 983 (1982). Defendant's arguments would suggest that proof beyond probable cause is necessary. Such is not the case. The affidavit is sufficient based on the knowledge of Officer Taylor. During the performance of his official duties Officer Taylor was run off the road by a blue pickup while on his way to the scene of a hit and run accident; he proceeded to the scene of the accident where he found blue paint chips indicating that the color of the vehicle which left the scene was blue; he later learned from the Deming police that defendant drove a blue pickup. Based on the information provided by the Deming police, Officer Taylor proceeded to defendant's home where he found a blue tail gate to a pickup, the same color as the paint chips found at the scene of the accident, as well as a pickup parked in the garage at defendant's home. All of the facts known to Officer Taylor were sufficient to create a circumstantial case establishing probable cause to believe that a search warrant should issue. Probable cause arose when Officer Taylor found the blue pickup tail gate which matched the color of the paint chips found at the scene of the accident and the pickup parked in the garage. Although the affidavit did not describe direct evidence of criminal activity, all of the facts known to Officer Taylor at the point of seeing the tail gate and pickup established "circumstances" or a substantial circumstantial case of criminal activity sufficient to lead a reasonable and prudent man to believe that the blue tail gate and pickup amounted to evidence of a crime. *See,* N.M.R.Crim.P. 17(f), N.M.S.A.1978 (1980 Repl.Pamph.); *State v. Santillanes,* 89 N.M. 727, 557 P.2d 576 (Ct.App.1976).

The credibility and factual basis of the Crime Stopper informant is not specifically set forth in the affidavit. The information provided by the Crime Stopper's informant, however, was corroborated by information provided by the Deming police, and by Officer Taylor's own observations. *State v. Jones,* 96 N.M. 14, 627 P.2d 409 (1981). All were facts and circumstances which could be properly considered by the magistrate, together with the reasonable inference he could draw. *State v. Snedeker, supra.*

*Exclusion of Evidence*

■ Marijuana had been removed from the bodies of the victims. The State's motion to prohibit the defendant from eliciting any testimony or comment about the marijuana was granted. An issue at trial was whether the victims or defendant had caused the accident by crossing the dividing line of the highway.

Defendant contends the trial court abused its discretion in not admitting any testimony relating to the marijuana. *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977). He argues the jury was entitled to have the fact of the marijuana possession and to give it whatever weight it chose.

Rule 401 of the Rules of Evidence, N.M.S.A.1978, states:

**Rule 401. Definition of "relevant evidence."**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Does the possession of the marijuana have a tendency to make the existence of the fact that the victims were across the center line and in defendant's lane of travel more probable? We think not. The fact of bare possession, without more, is at best neutral under the facts of this case. It is evidence of a criminal act, but it is not evidence which would tend to be probative of the victims' negligence and of their being the sole cause of the accident. *State v. Romero,* 69 N.M. 187, 365 P.2d 58 (1961).

The trial court's ruling was proper. The evidence was irrelevant.

*Double Jeopardy*

■ Prior to this appeal defendant had been tried three times on the same charges, each ending in a mistrial because of the inability of the jury to reach a verdict.

Relying on cases from other jurisdictions and by analogies, defendant would have us

hold that after three properly declared mistrials on a hung jury, a fourth trial for the same offense constitutes double jeopardy. We disagree.

The purposes and policies for when a defendant may be placed in double jeopardy following the declaration of a mistrial are generally set out in *State v. De Baca,* 88 N.M. 454, 541 P.2d 634 (Ct.App.1975), and cases cited therein. This rationale is no different in the case of a hung jury. *See Cowan v. Davis,* 96 N.M. 69, 628 P.2d 314 (1981), and *O'Kelly v. State,* 94 N.M. 74, 607 P.2d 612 (1980). The fact that there were three mistrials does not change this rationale. As stated in *State v. Spillmon,* 89 N.M. 406, 553 P.2d 686 (1976):

If a mistrial had been properly declared, jeopardy would not have attached and the State would be free to assert its claims before another jury * * *. "A mistrial or a new trial secured by plaintiff or defendant, continues the jeopardy and does not renew it."

Thus, in the instant case jeopardy did not attach. *See United States v. Persico,* 425 F.2d 1375 (2nd Cir.1970).

### Prosecutorial Misconduct

■ On the basis of certain remarks made by the district attorney in a taped radio interview, aired on the morning prior to the jury starting its deliberation, the trial court entered an order granting defendant a new trial. The district attorney filed an application for a writ of prohibition with the New Mexico Supreme Court in cause no. 13,746. The Supreme Court entered its alternative writ and subsequently made the writ permanent, thus prohibiting the new trial granted on the basis of the prosecutor's remarks.

We are asked to review the propriety of the district attorney's actions. This we cannot do because such would amount to a review of the Supreme Court's order. We cannot review orders of the Supreme Court. *State v. Sisneros,* 98 N.M. 201, 647 P.2d 403 (1982); *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973).

### Sentencing

The trial court deferred sentencing on both counts for a period of eighteen months on condition that defendant serve 135 days in the county jail, that defendant enter into and abide by the terms of a probation agreement, including actual costs of probation, and a "mandatory condition" that defendant "absolutely abstain" from the consumption of alcoholic beverages during probation.

Defendant contends that the sentence was improper. We agree.

■ The trial court's sentencing authority is that which has been conferred by the Legislature. *State v. Hernandez,* 97 N.M. 28, 636 P.2d 299 (Ct.App.1981). If the sentence is unauthorized, it is null and void. *State v. Peters,* 69 N.M. 302, 366 P.2d 148 (1961); *State v. Holland,* 91 N.M. 386, 574 P.2d 605 (Ct.App.1978).

■ In this case the sentence had been deferred. It was as if no sentence had been imposed. The sentence was contradictory. One contradiction was that there was a jail sentence given when there was no sentence. *State v. Aragon,* 93 N.M. 132, 597 P.2d 317 (Ct.App.1979). A second contradiction was that defendant was to be imprisoned for 135 days and placed on probation. Section 31–21–5(A), N.M.S.A.1978 (1981 Repl. Pamph.), states: " 'probation' means the procedure under which an adult defendant, found guilty of a crime upon verdict or plea, is released by the court *without imprisonment* under a suspended or deferred sentence and subject to conditions[.]" (Emphasis added.) The trial court cannot imprison a person and place that same person on probation for the same period of time. We define imprisonment as the bare commitment of a person to a place of incarceration. *See* §§ 31–18–13, 31–19–1, 31–20–2, N.M.S.A.1978 (1981 Repl.Pamph.).

Seeking to avoid the contradictions identified in the preceding paragraph, the State asserts that the county jail sentence was a condition of probation. If such were true, the issue would be the trial court's authority to impose a jail term as a condition of

probation. *See State v. Padilla,* 98 N.M. 349, 648 P.2d 807 (Ct.App.1982); *State v. Gardner,* 95 N.M. 171, 619 P.2d 847 (Ct.App. 1980). However, the jail term was not imposed as a condition of probation. The judgment states that sentence was deferred on two conditions—the county jail time *and* probation. The State also contends that a deferred sentence may be conditioned on the service of jail time. We have pointed out that this is a contradiction in terms—a sentence to jail as a condition of imposing no sentence lacks statutory authority. *See* § 31–20–3, N.M.S.A.1978 (1981 Repl. Pamph.).

A portion of the judgment is unauthorized. It may be that the trial court intended to impose sentence and suspend all but the jail time; we do not know. We do know that no part of the sentence has been executed, *see State v. Aragon, supra;* the judgment recites that the bond previously posted was continued for the appeal. In this circumstance, an authorized sentence is to be imposed.

The conviction is affirmed. A portion of the sentence being void, *see State v. Peters, supra,* the sentence is vacated and the cause is remanded for entry of an authorized sentence.

IT IS SO ORDERED.

WOOD and DONNELLY, JJ., concur.