806 P.2d 578

STATE of New Mexico, Plaintiff–Appellee,

v.

Floyd VALDEZ, Defendant–Appellant.

No. 12094.

Court of Appeals of New Mexico.

Dec. 13, 1990.

Certiorari Denied Feb. 6, 1991.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Paul J. Kennedy, Albuquerque, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals his convictions for possession of marijuana and possession of heroin. The sole issue raised on appeal is whether the trial court erred by not suppressing the fruits of a warrantless search of defendant's residence. Issues raised in the docketing statement but not briefed are deemed abandoned. *State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We reverse and remand for a new trial.

## FACTS

On September 21, 1988, state police officers and game and fish officers flew a state police helicopter over a remote area of Rio Arriba County. The officers were looking for a suspected marijuana plantation in the area. While flying in the helicopter, the officers observed a greenhouse attached to a residence belonging to defendant. Upon further observation of the greenhouse from the helicopter, at an altitude of approximately 500 feet, the officers could see through opaque roofing and siding of the greenhouse that marijuana was being grown inside.

Apparently, one of the game and fish officers noticed a man watching the helicopter fly above the residence. Defendant later testified that he heard the helicopter and began watching it with his binoculars. Eventually, the officers landed the helicopter a short distance west of defendant's residence. Upon landing, the officers approached defendant's residence and noted that the marijuana could be seen in the greenhouse from ground level. The officers then approached the front of defendant's property.

As the officers reached the front gate to defendant's property, they called to defendant to restrain his dogs. Defendant did so. Officer Leo Martinez then informed defendant that they were there to seize his marijuana plants. Defendant told Officer Martinez that he thought the officers needed a warrant to do "that." Officer Martinez told defendant that because the marijuana plants were in plain view from the helicopter, the officers could enter the premises and seize the plants. Thereafter, the officers entered the residence with defendant.

Once inside the house, the officers conducted a search of the entire residence. Officer Martinez explained that he ordered the search for the safety of himself and his fellow officers. Apparently, Officer Martinez had "information" that defendant may have been involved in the burglary of an arsenal in Colorado and may have had automatic weapons in his possession. Officer Martinez also testified that he had no way of knowing if anyone else was in the house and so he conducted the search for safety reasons. As a result of the search, the officers discovered several weapons. No one else was found in the house.

While the officers were securing the weapons in defendant's kitchen, one of the officers noticed a plate lying on the counter containing razor blades and a brown substance which Officer Martinez suspected to be heroin. The officers seized the weapons, the plate with the suspected heroin, and the six marijuana plants growing in the greenhouse attached to defendant's home. About one hour after the evidence was seized, defendant was arrested and taken away along with the seized evidence. One

officer stayed behind to wait for other officers to return with a search warrant for a more thorough search of the residence.

DISCUSSION

Defendant challenges the officers' warrantless search of his residence. He does not object to the officers' actions regarding their observation of his greenhouse from the helicopter. Indeed, such action has been authorized by the United States Supreme Court in *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989), *rehearing denied, Florida v. Riley*, 490 U.S. 1014, 109 S.Ct. 1659, 104 L.Ed.2d 172 (1989). However, defendant argues that simply because the police officers saw the marijuana in plain view does not authorize them to enter his home without a warrant to seize the plants. We agree.

In *State v. Calvillo*, 110 N.M. 114, 792 P.2d 1157 (Ct.App.1990), we recognized that the observation of evidence of a crime in plain view from a public, nonprotected area did not constitute a search under the fourth amendment. However, we also recognized that the police did not necessarily have the right to make a warrantless intrusion into the defendant's home to seize the evidence. *Id.* Warrantless searches are only permissible under the fourth amendment if they fall within one of the following exceptions to the warrant requirement: 1) plain view; 2) probable cause plus exigent circumstances; 3) search incident to a lawful arrest; 4) consent; 5) hot pursuit; and 6) inventory searches. *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980). Another exception added to that list recently by the United States Supreme Court is the "protective sweep" rule. *See Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). We have recently acknowledged that rule in New Mexico. *See State v. Lara*, 110 N.M. 507, 797 P.2d 296 (Ct.App.1990). The state contends that the officers' warrantless entry into defendant's residence was allowable under either the protective sweep or exigent circumstances rules.

## I. PROTECTIVE SWEEP

■ In *Maryland v. Buie*, the Court defined a protective sweep as "a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others." 494 U.S. at ——, 110 S.Ct. at 1094, 108 L.Ed.2d at 281. The court went on to say that a protective sweep may be undertaken if the searching officers possess " 'a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[s]" the officer in believing' that the area swept harbored an individual posing a danger to the officer or others." 494 U.S. at ——, 110 S.Ct. at 1095, 108 L.Ed.2d at 282 (citations omitted) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), which quoted from *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)).

Officer Martinez testified that he had no way of knowing who was in the house and so he decided to conduct a search of the residence for individuals and weapons that may have posed a danger to himself and the other officers. However, the search of defendant's residence and seizure of weapons and drug related evidence was conducted before the officers decided to arrest defendant. Indeed, defendant was uncuffed and unsubdued during the entire time the officers were searching the premises. Moreover, the officers even asked defendant to retrieve other weapons they believed may have been in the house. Although Officer Martinez testified that he believed defendant may have been involved in the burglary of an arsenal and had automatic weapons in his possession, Martinez could only vaguely refer to "information" he had about the burglary and possession of weapons from intelligence files. We do not believe a protective sweep was called for under the facts of this case.

■ A protective sweep is only allowed incident to a lawful arrest. *See Maryland v. Buie*. In this case, defendant was not arrested until sometime after the search of his residence had taken place. We have serious concerns about such police practices. We believe that a protective sweep is allowed incident to an arrest because the

arrest signals that the police fear that the person arrested may pose a danger. If the officers also possess a reasonable belief that others may be hiding that pose a danger, a protective sweep is permissible. In this case, defendant was not arrested or subdued in any way at the time the search took place. We fail to see how the officers could have reasonably feared danger from others when they were not even concerned enough to restrain defendant first. Even more surprising, the officers asked defendant to retrieve other weapons from the house. If the officers truly feared for their safety, such conduct was encouraging the exact type of danger the protective sweep was designed to prevent. Because the search was not conducted incident to the arrest, we do not believe the protective sweep rule applies in this case.

## II. EXIGENT CIRCUMSTANCES

Even if the protective sweep rule does not apply, the state argues that exigent circumstances allowed the officers to make a warrantless entry into defendant's residence. The state contends exigent circumstances existed because defendant could have destroyed the evidence. In support of its argument, the state points to evidence that defendant had seen the police helicopter flying over his property. Apparently, the state reasons that there was a danger defendant would attempt to destroy or remove the plants before the officers could return with a search warrant.

■ A warrantless entry into a residence under the exigent circumstances rule requires probable cause plus exigent circumstances. *See State v. Ruffino.* We have defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App. 1986). Defendant concedes that the officers had probable cause. Defendant, however, disputes the existence of exigent circumstances.

■ The test to determine if exigent circumstances exist is "whether, on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary." *Id.* There is no evidence in this case that defendant was about to destroy the marijuana plants. Indeed, the plants could be seen from ground level next to defendant's property. No imminent destruction was reported by the police officers, nor can we see the need for "swift action" as contemplated by *Copeland.* Because the officers could see the plants from the ground, they could be watched by the officers while the helicopter pilot returned for a search warrant. If destruction became imminent, the officers would have been able to observe it and could have acted on the basis of exigent circumstances at that time. We do not believe that facts existed for an officer to conclude that swift action was necessary to protect the evidence from destruction.

## CONCLUSION

Because the officers did not have a valid justification to enter defendant's residence without a warrant, the evidence seized pursuant to their unreasonable, warrantless search must be suppressed. Accordingly, defendant's conviction is reversed and remanded for a new trial.

IT IS SO ORDERED.

ALARID, C.J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge, (specially concurring).

I concur in the result. *See Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970) (threatened destruction of evidence); 2 W. LaFave, *Search and Seizure* § 6.5 (1987) (same); *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (security sweep); *United States v. Jackson,* 700 F.2d 181, 189–90 (5th Cir.) (security sweep after arrest outside premises), *cert. denied sub nom., Hicks v. United States,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).

Although in district court the state argued that the evidence could be admitted

**442**

under the inevitable-discovery rule, the state on appeal has failed to argue that the entry, even if unlawful, did not taint the later search pursuant to a warrant, which would have resulted in the seizure of the same evidence. Therefore, we need not address that argument.