836 P.2d 639

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Reynaldo ORTEGA, Defendant–
Appellant.**

No. 12479.

Court of Appeals of New Mexico.

March 5, 1992.

Certiorari Granted April 30, 1992.

Tom Udall, Atty. Gen. and Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Gina Maestas, Asst. Appellate Defender, for defendant-appellant.

## OPINION

BIVINS, Judge.

Convicted of possession of heroin with intent to distribute, contrary to NMSA 1978, Section 30–31–20(A)(3) (Cum.Supp. 1991), Defendant appeals raising the following issues: (1) whether the no-knock warrant was unlawful; (2) and, if unlawful, whether exigent circumstances existed at the time of execution that justified the officers' entry; (3) whether the affidavit for the search warrant was facially insufficient; (4) whether the search warrant was overbroad or the search conducted was outside the scope of the warrant; (5) whether the trial court erred in denying Defendant's motion for disclosure of the informants' identities; (6) whether the trial court erred

in joining Defendant's case with co-defendant's case; (7) whether the trial court erred in failing to declare a mistrial; or, alternatively, in failing to inform the jury that co-defendant had pled guilty to possession of heroin; and (8) whether the trial court erred in submitting to the jury only that evidence designated as relevant to Defendant. Other issues listed in the docketing statement but not briefed are deemed abandoned. *See State v. Fish,* 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985). We reverse on the fourth issue and remand for a new trial. Because we remand the action for a retrial, we find it necessary to also address issues one, two, three, and five. We need not address issues six, seven, or eight.

## FACTUAL AND PROCEDURAL BACKGROUND

After conducting an evidentiary hearing on Defendant's Motion to Suppress, the trial court entered its order denying the Motion. In the order, the trial court found that a magistrate issued a no-knock search warrant on December 20, 1989; that while New Mexico Rules of Criminal Procedure for both magistrate and district courts contain specific rules for the issuance of search warrants, those rules neither prohibit nor authorize no-knock search warrants; that the officers executing the search warrant in this case neither knocked nor announced their presence prior to entry; that entry was made pursuant to the search warrant only after a child who opened the door through which one of the officers entered announced the presence of the police officers; and that the manner of execution of the search warrant did not violate Defendant's rights under either the New Mexico or federal constitution. Based on those findings, the trial court concluded that a magistrate or a judge is not authorized to issue a no-knock search warrant; that the search warrant in this case was legally valid, but that the no-knock provision was of no consequence; and that the manner of execution of the warrant did not violate Defendant's constitutional rights. We read the trial court's conclusions to

mean that, while determining that there is no authority to issue a no-knock search warrant, in this case it had no significance because exigent circumstances justified the officers entering without first announcing their presence and purpose.

### 1. No–Knock Warrant

Because the trial court concluded as a matter of law that a magistrate or judge has no authority to issue a no-knock search warrant, Defendant understandably briefed that issue. The State, however, chose not to brief that issue, placing its entire reliance on the existence of exigent circumstances to justify the avoidance of the "knock and announce" rule. Since the State has opted not to defend the adoption of the no-knock search warrant, we decline to consider that question in this appeal. We think it prudent to consider the validity of no-knock search warrants on the particular facts and circumstances presented in a case where the issue is properly presented *and* when fully briefed by both sides. That was not done here.

### 2. Exigent Circumstances

██ While the Rules of Criminal Procedure both for the district and magistrate courts do not expressly require that law enforcement officers give notice of authority and purpose before making a forcible entry, *see* SCRA 1986, 5–211(C) and 6–208(D), common law imposes that requirement. *See State v. Sanchez,* 88 N.M. 402, 403, 540 P.2d 1291, 1292 (1975). *See generally* 2 Wayne R. LaFave, *Search and Seizure* § 4.8 (1987 & Supp.1992) [hereinafter *Search and Seizure* ] (generally required that officers give notice of authority and purpose prior to entry of premises with search warrant). Non-compliance with this standard is justified if exigent circumstances exist. *State v. Valdez,* 111 N.M. 438, 441, 806 P.2d 578, 581 (Ct.App.1990) (test for exigent circumstances is " 'whether, on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary' " (quoting *State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342,

1346 (Ct.App.1986))), *cert. denied,* 111 N.M. 316, 805 P.2d 85 (1991). *See generally* 2 *Search and Seizure, supra,* § 4.8(d) (discussing destruction of evidence exception to knock and announce rule).

■ Questions regarding good faith belief and exigent circumstances are questions of fact for the trial court, and the trial court's findings are given the same consideration as they are generally accorded under the substantial evidence standard. *State v. Sanchez,* 88 N.M. 402, 403, 540 P.2d 1291, 1292 (1975). The circumstances surrounding the entry without notice of authority and purpose must be evaluated from the standpoint of a "prudent, cautious and trained police officer." *Id.* While the officers *executing the warrant* may rely on information obtained in advance of execution, we view the circumstances at the time of execution to determine if exigency exists. *Cf. State v. Calvillo,* 110 N.M. 114, 118, 792 P.2d 1157, 1161 (Ct.App.) ("The issue is not what the circumstances eventually show; it is whether, on the basis of facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary."), *cert. denied,* 110 N.M. 72, 792 P.2d 49 (1990).

■ Based on information provided by confidential informants, a police officer (Lara) obtained a warrant to search co-defendant Jiminez' residence, together with the vehicles of Defendant and co-defendant parked at that residence, and the occupants in the residence at the time the warrant was to be executed. Officer Lara testified at the suppression hearing that approximately six to eight officers participated in the execution of the warrant. Several officers arrived in a van clearly marked with the "Sheriff Department" name and insignia. Other officers arrived in either marked or unmarked vehicles. Officer Lara was wearing a raid jacket with an emblem on the front and "Sheriff's Department" clearly written on the back. Other officers were either in plain clothes, uniform, or wearing similar raid jackets. The officers parked the van on the street near the driveway to the residence. Officer Lara and one or more officers proceeded toward the front door while several other officers went to the rear door. Officer Lara said that he observed several small children, ages five through seven, playing in the front yard. Upon arrival, he announced himself to the children as a police officer. One or more of the children started yelling "Cops! Cops!" with one child running from the yard through a screen door at the front entrance. Officer Lara followed in pursuit. Upon entering the front door, he observed Defendant make a dash toward the rear; however, other officers had entered through the rear door and apprehended him.

When questioned as to the basis for the no-knock entry, Officer Lara testified that it was based upon his experience and the information received from the informants. Officer Lara said that fourteen years experience taught him that traffickers in small amounts of heroin or cocaine usually destroy the contraband when confronted by police. With respect to the information provided by the informants, Officer Lara said that one or more informants had told him that co-defendant Jiminez had said that he would attempt to destroy the evidence if he saw the police coming. That information was contained in the affidavit for the search warrant.

Once the children ran screaming into the house, the trial court could reasonably determine that the occupants were alerted to the presence of the police, and the police were justified in assuming, based on their experience and information they had in this particular case, that evidence was about to be destroyed. *Cf. United States v. Carter,* 566 F.2d 1265, 1269 (5th Cir.) (where officer was "virtually certain" that persons inside knew of his presence and purpose making announcement would be a "useless gesture"), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978); *People v. Vargas,* 36 Cal.App.3d 499, 111 Cal.Rptr. 745, 748 (1973) (strict compliance with announcement requirement excused where officers have reason to believe occupants already know purpose of entry); *Commonwealth v. Beard,* 501 Pa. 385, 461 A.2d 790,

792–93 (1983) (noncompliance with announcement requirement excused where police reasonably believe occupant knew purpose and would attempt to destroy evidence).

■ We believe the dissenting opinion not only errs in applying a subjective test to determine that exigent circumstances did not exist, but ignores the standard of review. For example, the dissent refers to Officer Lara's testimony where he speculated that the children yelling "Cops! Cops!" was of no significance. If we were to apply a subjective standard, as the dissent seems to propose, then this testimony might be of value. This is not the test. The test is whether based on facts known to a prudent, cautious, trained officer, that officer could reasonably conclude that swift action was necessary. *See Valdez,* 111 N.M. at 441, 806 P.2d at 581; *Sanchez,* 88 N.M. at 403, 540 P.2d at 1292. As we have pointed out, Officer Lara, based on his experience, knew that traffickers in small amounts of heroin or cocaine usually destroyed the contraband when confronted by police, and an informant had said codefendant promised to do just that. Based on those facts, coupled with the children's yelling, the trial court could find swift action justified. With the officers' presence already made known by the children's actions, the court could find further announcement of presence and purpose unnecessary. When we view the evidence from the standpoint of whether evidence supports the trial court's finding of exigent circumstances, we believe it does. An appellate court should not review to find evidence that would support a different result.

In addition, the dissent appears to ignore the standard of review. This court has previously held that "the reviewing court views the evidence in the light most favorable to the initial factual determination, resolving all conflicts in the evidence and indulging all inferences in favor of the trial court's factual determination." *See State v. Wisdom,* 110 N.M. 772, 774, 800 P.2d 206, 208 (Ct.App.), *cert. denied,* 110 N.M. 749, 799 P.2d 1121 (1990).

We, therefore, hold that the evidence supports a finding of exigent circumstances that would justify execution of a search warrant without the requirement of first knocking and announcing the purpose.

**3. Sufficiency of Affidavit**

■ Defendant contends that the affidavit did not meet the requirements of the two-pronged test set forth in *State v. Cordova,* 109 N.M. 211, 214, 784 P.2d 30, 33 (1989). The supreme court held that "an affidavit must set forth both: (1) a substantial basis for believing the informant; and (2) a substantial basis for concluding the informant gathered the information of illegal activity in a reliable fashion." *See also* SCRA 1986, 5–211(E). The affidavit indicates that one of the informants had personally observed drugs at the residence and that the informant had in the past provided reliable information. *See Cordova,* 109 N.M. at 217–18, 784 P.2d at 36–37 (fact that informant had provided reliable information in the past is relevant to determination of credibility); *Wisdom,* 110 N.M. at 777, 800 P.2d at 211. In addition, there is evidence that a police officer had observed the informant drive to the residence and purchase heroin. We hold that there was sufficient information to authorize a search warrant of the residence.

**4. Scope of Search**

Defendant also argues that the search warrant was overbroad in its authorization for a search of the occupants of the residence and vehicles parked at the residence.

**a. *Search of Person***

■ Defendant contends that the warrant was overbroad and was not supported by probable cause to search Defendant. We agree. In examining the affidavit, we are unable to find sufficient probable cause to support the issuance of a search warrant concerning Defendant. Irrespective of the scope of the warrant, however, it is possible that Defendant's actions alone provided probable cause for his arrest and a search incident to his arrest. We remand for a determination by the trial court of whether

there was independent probable cause to support a warrantless arrest of Defendant, and, if so, whether the search of Defendant's person was sufficiently contemporaneous with his arrest to be upheld as a search "incident to" arrest.

### (i) *Probable Cause*

Upon lawful entry into the residence, officers observed Defendant rise from the sofa and drop a package onto the sofa. This package was later determined to be marijuana. A vial of heroin was also found on the sofa where Defendant had been sitting. *Cf. State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.) ("Probable cause exists when the facts and circumstances within the officers' knowledge * * * are sufficient to warrant a [person] of reasonable caution to believe that an offense has been, or is being, committed."), *cert. denied,* 104 N.M. 702, 726 P.2d 856 (1986). On remand, the trial court should determine whether the evidence supports a finding of probable cause to believe that Defendant had committed or was committing a criminal offense. If the trial court finds that there was independent probable cause to arrest Defendant, the court must then determine whether the search was "incident to" Defendant's arrest.

### (ii) *Incident to Arrest*

██ We are unable to determine from the briefs or the record the precise time Defendant was placed under arrest and whether the search was sufficiently contemporaneous to the arrest to justify the search as being "incident to" the arrest. As long as the fruits of the search were not necessary to justify the arrest, the search is lawful "[w]here the formal arrest followed quickly on the heels of the challenged search." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *see also In re Doe,* 89 N.M. 83, 85, 547 P.2d 566, 568 (Ct.App.) (where probable cause for arrest, search and seizure contemporaneous with, but before the arrest, was valid), *cert. denied,* 89 N.M. 206, 549 P.2d 284 (1976); *State v. Garcia,* 83 N.M. 490, 493, 493 P.2d 975, 978

(Ct.App.1971) (same), *cert. denied,* 83 N.M. 473, 493 P.2d 958 (1972). We remand for a determination of whether the search was valid as being "incident to" a lawful arrest.

### b. *Search of Vehicle*

In addition to searching Defendant, the officers searched a car parked at the residence in which they found balloons of a type used to transport heroin and a tape case with Defendant's name on it containing marijuana seeds. Defendant contends that: (1) the warrant was overbroad and was not supported by probable cause; and (2) the search was invalid because the vehicle searched did not belong to Defendant.

██ The State argues that because Defendant failed to include this argument in his Motion to Suppress, he has failed to preserve the argument for appeal. We disagree. The committee commentary to Rule 5-212 of the New Mexico Rules of Criminal Procedure specifically states that the Rules "do not require motion objecting to illegally seized evidence prior to trial." SCRA 1986, 5-212; *see also State v. Alberico* (No. 12,-368, slip op. at 3 n. 1) (Ct.App.1991). *See generally* 4 *Search and Seizure, supra,* § 11.1(a) (discussing split in jurisdictions between contemporaneous objection rule and requirement that objection be made at pretrial motion to suppress). Defendant adequately preserved the issue under Rule 12-216 of the New Mexico Rules of Appellate Procedure, SCRA 1986, 12-216, by objecting at trial to the evidence obtained from the search of the vehicle. The trial court overruled Defendant's objection and admitted the evidence. Defendant contends that the warrant authorizing a search of "vehicle[ ] presently parked at the residence belonging to * * * Ray Ortega" was overbroad in that it failed to outline facts supporting probable cause to believe that there was heroin or distribution paraphernalia in the vehicle. We agree. In addition, even if the affidavit was supported by the requisite probable cause, the warrant was invalid because it did not describe the vehicle with sufficient particularity. The fact that Defendant did not own the vehicle

searched is not necessarily fatal. For the search to be upheld, however, the warrant must contain sufficient correct descriptive facts to indicate the place to be searched. *See* U.S. Const. amend. IV (no warrants shall issue except those "particularly describing the place to be searched"). While make, model, year, color, owner, and license is not ordinarily required, some combination of details such as make and license are necessary to adequately apprise the officer of the vehicle to be searched. *See, e.g., State v. Sansom,* 112 N.M. 679, 680, 818 P.2d 880, 881 (Ct.App.1991) (affidavit described vehicle to be searched as a "1974 red and white GMC pickup truck with New Mexico license plate number LC8767"); *State v. Donaldson,* 100 N.M. 111, 118, 666 P.2d 1258, 1265 (Ct.App.) (affidavit describing vehicle as " 'Blue 1977 Volkswagen Scirrocco, NM License No. DED–915, Vehicle Identification No. 5372016198' "), *cert. denied,* 100 N.M. 53, 665 P.2d 809 (1983); *State v. Lopez,* 99 N.M. 791, 792, 664 P.2d 989, 990 (Ct.App.1982) (affidavit describing vehicle to be searched as a " 'Blue Chevy or GMC pickup, possible year 1967–1973, short wheel base with damage to the left front fender and headlight' "). *See generally* 2 *Search and Seizure, supra,* § 4.5(d); 1 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 3.4(e), at 226 (1984 & Supp.1991). We hold that the warrant contained insufficient correct descriptive facts to uphold the search in this action.

▇ Finally, the State contends that any error in admitting the evidence obtained from the vehicle was harmless error. We disagree. We cannot say that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Clark v. State,* 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991); *see also Sansom,* 112 N.M. at 684, 818 P.2d at 885 (setting forth test for harmless error). We reverse and remand for a retrial without the use of evidence found in the vehicle in question.

5. Disclosure of Informants' Identities

Defendant contends that the trial court erred in denying his motion for disclosure of the identities of the confidential informants. We remand to the trial court for rehearing pursuant to SCRA 1986, 11–510(C)(2) within the guidelines set forth below. *See State v. Perez,* 102 N.M. 663, 667, 699 P.2d 136, 140 (Ct.App.1985) (balancing state's interest in maintaining anonymity of informant to rights of defendant to fair trial). The State does not object to this disposition of the issue.

There are three options for the trial court on remand. First, if the trial court finds that the informant knows of nothing helpful to the defense, then disclosure is not required. Second, if the trial court finds otherwise, then the trial court shall balance the appropriate interests under Rule 11–510(C)(2). If the interests against disclosure outweigh the probative force of the matters known to the informant, then disclosure is not required. Third, if the probative force outweighs the interests against disclosure, then on retrial there shall be a disclosure of the informant's identity. *See State v. Gallegos,* 96 N.M. 54, 57–58, 627 P.2d 1253, 1256–57 (Ct.App. 1981) (factors to balance under Rule 11–510(C)(2)).

CONCLUSION

For the reasons stated, we reverse and remand for a new trial. *See State v. Post,* 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct. App.1989) ("[W]hen a trial court erroneously admits evidence that is excluded on appeal, and the remaining evidence is insufficient to support a verdict, double jeopardy does not preclude a retrial.").

IT IS SO ORDERED.

FLORES, J., concurs.

CHAVEZ, J., concurs in part and dissents in part.

CHAVEZ, Judge (concurring in part dissenting in part).

Finding no quarrel with the majority's reasons and holding in sections (1), (3), (4) and (5), I concur with the majority opinion in these sections. I cannot agree, however, with the reasoning nor the holding in section 2 which discusses exigent circum-

stances. From that section, I therefore dissent.

Exigent Circumstances.

It is well-established that prior to forcible entry, police officers must give notice of their authority and purpose and be denied admittance. *See State v. Sanchez,* 88 N.M. 402, 540 P.2d 1291 (1975); *State v. Baca,* 87 N.M. 12, 528 P.2d 656 (Ct.App. 1974). This notice requirement serves a number of valid purposes. For example, an unannounced breaking and entering into a home could lead the occupants to believe their safety is in jeopardy, thereby resulting in unnecessary defensive measures. Further, notice minimizes the mistaken chance of entry of the wrong premises and the resultant subjecting of innocent persons to "the shock, fright, or embarrassment attendant upon an unannounced police intrusion." *See Ker v. California,* 374 U.S. 23, 57, 83 S.Ct. 1623, 1642, 10 L.Ed.2d 726 (1963) (Brennan, J., dissenting). And finally, notice allows the occupants an opportunity to voluntarily admit officers into their home, thereby minimizing the risk of property damage. *See* 2 Wayne R. La-Fave, *Search & Seizure* § 4.8(a) at 272 (1987).

Non-compliance with the knock and announce procedure is justified if exigent circumstances exist at the time of the warrant's execution. *See State v. Sanchez.* Thus, the determinative question is whether, at the moment of entry, the officers possessed an objectively reasonable belief that evidence was being destroyed, that an escape was imminent, or that a risk of harm existed to either an occupant or the officers involved. *See State v. Sanchez; State v. Copeland,* 105 N.M. 27, 727 P.2d 1342 (Ct.App. 1986); *State v. Arce,* 83 Or. App. 185, 730 P.2d 1260 (1986). I disagree with the majority's holding that exigent circumstances in the present case obviated the requirement to comply with the knock and announce requirements.

The facts indicate that the officers ran into the residence immediately behind the children. A running child first opened a screen door and ran inside with the officers in tow. I am not convinced that the children's yells constituted an adequate substitute for the notice requirements, or that a reasonable assumption could be made that the occupants were alerted to the presence of the police. Although the parties agree the children were yelling when they ran into the house, there is some disagreement as to the content of the children's cries. Officer Lara, who ran into the residence immediately behind the children, testified the children yelled "cops! cops!" Co-defendant's wife, who was inside the residence, testified the children yelled "they're going to kill us!" Sheriff Tucker, who reached the residence at the same time as the children, testified the children yelled "police!"

Even assuming a child yelled "police" or "cops," I disagree that a reasonable conclusion can be made that the purpose of the officers' arrival was apparent. *See Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1985); *Hair v. United States,* 289 F.2d 894 (D.C.Cir.1961); *State v. Gassner,* 6 Or.App. 452, 488 P.2d 822 (1971) (it is not enough that by knocking on the door, or in some other way, the occupant has been made aware that someone is outside). To conclude the yells fulfilled the notice requirements would be tantamount to a holding that officers themselves could yell "police" immediately prior to making an entry and thereby satisfy the purpose and requirement of a prior announcement. I cannot agree with a holding that supports such a position. Thus, I am not convinced that the children's yells, moments before the officers entered the house, constituted sufficient notice of the officers' authority and purpose.

Moreover, even if the children's yells announced the officers' presence, there is no indication that the yells were intended to or could "tip off" the adult occupants so that evidence could be destroyed. The facts here are unlike the situation addressed in *People v. Vargas,* 36 Cal.App.3d 499, 111 Cal.Rptr. 745 (1974), in which the officers reasonably could have believed the words yelled in Spanish, not understood by the officers, were intended as a warning to the residence's inhabitants. Here, the children's yells were in English and under-

stood by the officers. Moreover, as opposed to believing the yells were intended as a warning, *cf. People v. Vargas*, Officer Lara testified that he believed the children were yelling because they were scared upon observing officers run toward the house with guns. In addition, we note that the yells in *Vargas* took place after an officer had identified himself as a narcotics agent to an older child of approximately seventeen years who was in the front yard. Here, however, the children who yelled were younger (5–6 years old) and ostensibly unaware of the officers' authority. Officer Lara himself testified at the suppression hearing that the child yelling "cops" was of no significance to him because " * * * the little kid was just scared, uh I mean to see a whole bunch of people coming running toward their house with guns and they just took off yelling."

Further, considering Officer Lara's testimony that there was no indication the suspects had guns, it does not appear that the officers believed that a risk of harm existed to any of the persons involved. *Cf. United States v. Justice*, 835 F.2d 1310 (10th Cir.1987), *cert. denied*, 487 U.S. 1238, 108 S.Ct. 2909, 101 L.Ed.2d 940 (1988) (officer's observation of juvenile shooting a gun in the front yard and officer's observation that the door appeared to have been recently kicked in justified officer's entry without a warrant). Officer Lara also testified there was no indication the suspects were attempting to destroy evidence before officers entered the house. In addition, the facts do not reflect that the officers believed an escape was imminent. *Cf. United States v. Carter*, 566 F.2d 1265 (5th Cir.), *cert. denied*, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978) (officer heard an individual yell "its the cops" and then heard people inside running away from the door); *Commonwealth v. Beard*, 501 Pa. 385, 461 A.2d 790 (1983) (upon observing police, the suspect ran into the house yelling "police" and locked the door behind him). Based on the foregoing discussion, contrary to the majority's position, it does not appear that a prudent, cautious, trained officer should "reasonably conclude that swift action [was] necessary." I would hold that exigent circumstances did not exist at the time of the warrant's execution.

I do not intend my discussion, however, to intimate a view that previously obtained information should not be able to be taken into account in determining the necessity of dispensing with ordinary notice requirements. Rather, I would hold that an examination of previously obtained information, together with the officers' perception and knowledge immediately prior to effecting the entry, is the most appropriate approach. *See, e.g., State v. Sanchez* (officers did not give notice of their purpose and entered before they were denied entrance; in upholding the search, the court considered: the informant's statement that the defendant would flush the heroin down the toilet, the officers' knowledge of drug suspects' behavior, and the officers' observation that upon knocking they heard people moving and yelling voices as if someone was calling to another for the purpose of getting attention); *Ker v. California* (officers entered defendant's bedroom unannounced and arrested him for possession of marijuana; the court held that the officers' belief that defendant was in possession of narcotics, which could be quickly and easily destroyed, together with the defendant's furtive elusive conduct shortly before the arrest, was grounds for the belief that the defendant may have been expecting the police).

The majority has noted that "[w]hen questioned as to the basis for the no-knock entry, Officer Lara testified that it was based upon his experience [fourteen years of prior narcotic investigations] and the information received from the informants [that the suspects would attempt to destroy drug evidence if they knew of imminent police search]." I am not convinced, however, that a belief co-defendant would destroy the drugs upon observation of the officers is sufficient to invalidate the knock and announce requirements under the facts of this case.

Although our courts have previously upheld unannounced police entries, our decisions have been limited to situations in which, at the time of entry, the officers in

good faith believed that they or someone in the house were in danger of bodily harm or that the suspect was attempting to flee or destroy evidence. *See State v. Sanchez; State v. Baca.* To extend the exigent circumstances at the time of entry exception to the present situation would, in effect, obviate the notice requirements for a significant number of drug cases. Although the affidavit indicated that co-defendant would destroy the drugs upon observation of the officers and that the drugs were easily disposable, I cannot agree that this assertion is any way unique to this particular case. Common sense dictates that other drug suspects would do the same. *See State v. Bates,* 120 Ariz. 561, 587 P.2d 747 (1978); *People v. Gastelo,* 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706 (1967) (neither this court nor the United States Supreme Court has held that unannounced forcible entries may be authorized by a blanket rule based on the type of crime or evidence involved). Nor am I convinced that Officer Lara's fourteen year career experience justified any belief that exigent circumstances existed. *Cf. State v. Johnson,* 372 So.2d 536 (Fla.Dist.Ct.App.1979) (where on prior experience at the particular premises involved, defendant had flushed drugs down the toilet, an announced entry upheld). Despite what may be a general belief by law enforcement officers that suspects will attempt to destroy drugs if aware of an imminent search, the notice requirements have remained intact. *State v. Anaya,* 89 N.M. 302, 551 P.2d 992 (Ct.App.1976) (officers made unannounced intrusion into the crawl space underneath trailer and severed the sewer pipe; justified by exigent circumstances, however, because particular suspect had, on a previous occasion, attempted to dispose of drugs by flushing down the toilet); *State v. Baca.*

In summary, I would hold that exigent circumstances did not exist to allow officers to by-pass the knock and announce rule. Thus, I cannot agree that the children's yells, together with Officer Lara's fourteen years experience and the information obtained from the informants, constituted exigent circumstances. I would therefore reverse defendant's conviction and remand for entry of an order suppressing the evidence obtained as a result of the no-knock warrant.