2005-NMCA-039

110 P.3d 517

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Leroy ZAMORA, Defendant–Appellant.**

No. 23,436.

Court of Appeals of New Mexico.

Feb. 11, 2005.

Certiorari Granted, No. 29,117,
April 4, 2005.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Steven J. Potter, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

VIGIL, Judge.

{1} Appellee State of New Mexico's motion for rehearing is denied. The opinion filed in this case on January 13, 2005, is withdrawn and this opinion is substituted in its place.

{2} Defendant was convicted of trafficking by possession with intent to distribute cocaine, conspiracy, possession of drug paraphernalia, and concealing identity following the search of a motel room. The dispositive issues are whether Defendant has standing to challenge the search of the motel room and whether a warrantless search of the medicine cabinet in the bathroom of the motel room can be justified as a protective sweep. We hold that Defendant has standing to challenge the search and that the search of the medicine cabinet went beyond the parameters of a protective sweep. We reverse and remand for a new trial.

FACTS

{3} Defendant filed a motion to suppress three days before the trial date, arguing that evidence discovered during the search of a motel room should be suppressed as resulting from an unlawful, warrantless search of the motel room. Noting that the motion was untimely, the trial court ruled that it would not hold a separate hearing on the motion, but would entertain it during the trial. The following is the material evidence that is pertinent to the issues.

{4} Sergeant Depies of the Albuquerque Police Department responded to a call from the dispatcher that an individual was trespassing on the premises of the Economy Inn. Sergeant Depies identified the trespasser who admitted he had been smoking crack cocaine. The trespasser subsequently identified Room 244 in the motel as the place where he purchased the crack cocaine. Sergeant Depies then told the motel clerk what he had learned, and the clerk said the room had been rented two days earlier by Thomas Henderson and his mother Erica, according to the registration. Sergeant Depies called other officers for assistance to continue the investigation.

{5} Defendant, his cousin Manuel Hernandez, and Defendant's aunt were in Room 244 at the Economy Inn when police officers knocked on the door. Defendant testified that prior to going to the motel, he had alternated between living on the street and staying at his mother's house. He saw Her-

nandez at a Walgreen's and Hernandez said that he had a motel room that his mother was also using and he invited Defendant to stay with them in the motel room. Hernandez had rented the room two days earlier, on October 12, 2000, under the aliases of Thomas and Erica Henderson. Defendant testified he called his mother to bring him some clothes when they arrived at the motel. Defendant understood he was invited to spend the night in the motel room. After receiving clean clothes sent by his mother, Defendant said he took a shower, combed his hair, put clean clothes on, and got into the only bed in the room. Defendant testified that he had an expectation of privacy in the room "[b]ecause [his] family was there" and because he was going to spend the night there.

{6} Sergeant Depies went to Room 244, accompanied by Officers Leveling and Melton, wearing his uniform. As Sergeant Depies approached the room, "a subject peeked out around the drapes" at the officers "and then ran back into the room." Sergeant Depies also heard "running" from inside the room which made him suspicious. Sergeant Depies knocked on the door, announced, "Police," and either ordered or requested the occupant to come to the door. Hernandez opened the door. Sergeant Depies asked whose room it was and Hernandez answered it belonged to him and his mother. Sergeant Depies asked Hernandez if he could "step into his room, talk about an allegation of drug dealing from that room and he nodded yes." Sergeant Depies added, "[he] might have muttered yes or something, opened the door, walked in and left the door open." The officers walked in the room. Present in the room were Hernandez, Defendant, and Defendant's aunt. Sergeant Depies saw pieces of crack cocaine, a long razor blade, and a crack pipe on a table in the corner of the room. Sergeant Depies asked Hernandez if the substance he observed would test positive for cocaine and Hernandez responded, "yeah, because my mom smokes crack." Sergeant Depies then handcuffed Hernandez and instructed the officers to handcuff Defendant and his aunt. Shortly after Officer Melton handcuffed Hernandez, he began a protective sweep of the room, described as follows by Sergeant Depies:

A protective sweep would just encompass going through, looking for bodies, making sure live people, making sure there isn't a person in there that could possibly pose a threat to us while we're doing the investigation. What we would do, anyone hiding in the bathroom, hiding in the tub, hiding in the closet here, there where people can be found and that's what Officer Melton— he was doing. He was looking that these were the only three people inside the motel room.

{7} Officer Melton testified that Hernandez "nodded, [and] walked into the room" when Sergeant Depies asked if the officers could come into the room. Officer Melton testified, "[m]y main responsibility was to come in, make sure for Sergeant Depies' safety as he conducted an investigation." He described how he performed the protective sweep as follows:

I went into the back bathroom, when you walk in I wanted to look inside, make sure no one else was also hiding inside the bathroom. I noticed that the window was open and so I looked outside. I had been on several calls before where people had thrown things out the window where they didn't want us to find. I look outside, I didn't find anything. I look back towards where the bath tub was, shower area was, I notice that the vanity, the medicine cabinet, was opened approximately two or three inches. I looked and I could see . . . inside there. I notice a plastic bag, just a light plastic bag. Several times that I arrested people I have found narcotics in plastic bags, so I opened the vanity and I found two plastic bags containing a large amount of what I thought at the time was crack cocaine and which was later determined to be by Officer Chavez that came and field tested it for us.

## STANDARD OF REVIEW

{8} "In reviewing a suppression order, this Court reviews the facts under a substantial evidence standard and reviews the district court's application of the law to those facts de novo." *State v. Cassola*, 2001–NMCA–072, ¶ 2, 130 N.M. 791, 32 P.3d 800.

The district court made no findings of fact. "This is a regular occurrence when we review decisions on motions to suppress evidence in criminal cases." *State v. Jason L.*, 2000-NMSC–018, ¶ 11, 129 N.M. 119, 2 P.3d 856 (quoting *State v. Gonzales*, 1999–NMCA–027, ¶ 11, 126 N.M. 742, 975 P.2d 355). In such a circumstance, where the district court made no findings of fact, "our practice has been to ... employ presumptions [and as] a general rule, we will indulge in all reasonable presumptions in support of the district court's ruling." *Id.* (internal quotation marks and citation omitted). However, "[o]ne constraint upon that practice is that without an indication on the record that the district court rejected the uncontradicted evidence, we presume the court believed all uncontradicted evidence." *Id.* Here, the district court did state on the record, "I do find that Defendant's testimony is a little bit questionable in certain areas," and found there was no standing. However, this alone is insufficient. Unless the district court makes findings of fact, or rejects specific uncontradicted testimony with reasons on the record, we presume the district court believed the uncontradicted evidence. We determine whether the law was correctly applied to the undisputed facts. *See State v. Pierce*, 2003–NMCA–117, ¶ 10, 134 N.M. 388, 77 P.3d 292 (stating that when the facts are not in dispute on a motion to suppress, we determine whether the law was correctly applied to those facts); *see also State v. Pena*, 108 N.M. 760, 767, 779 P.2d 538, 545 (1989) (reversing motion to suppress when evidence that search was beyond the scope of consent was "without conflict").

## A. Standing

{9} The trial court orally ruled that Defendant had no standing to challenge the search of the room. No formal written order was filed. Defendant argues this ruling was incorrect. We agree.

{10} Defendant's standing to challenge a search as violative of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution depends on whether he has a reasonable expectation of privacy in the place searched. *State v. Leyba*, 1997–NMCA–023, ¶ 9, 123 N.M. 159, 935 P.2d 1171. Whether a defendant has standing involves two inquiries: (1) whether the defendant had an actual, subjective expectation of privacy in the premises searched; and (2) whether the defendant's "subjective expectation [is] one that society is prepared to recognize as reasonable." *State v. Esguerra*, 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App. 1991) (internal quotation marks and citation omitted); *accord Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

{11} Defendant's testimony establishes that he had an actual and subjective expectation of privacy in the motel room. He testified that he had an expectation of privacy in the room because his "family" was there and because he was going to spend the night there. The real issue raised by this case is whether Defendant's subjective expectation of privacy is one that society is prepared to recognize as reasonable. We hold that it is.

{12} In *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Supreme Court held that a defendant who was an overnight guest in a home had a reasonable expectation of privacy in the home. *Id.* at 97–98, 100, 110 S.Ct. 1684. He therefore had standing to challenge his warrantless arrest in that home. The Court said:

To hold an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes that the everyday expectations of privacy that we all share. Staying overnight in another's home is a *longstanding social custom that serves* functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a house-guest has a legitimate expectation of privacy in his host's home.

From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

*Id.* at 98–99, 110 S.Ct. 1684. One authority concludes that *Olson* amounts to a per se rule that one's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." 6 Wayne R. LaFave, *Search & Seizure* § 11.3(b), at 148 (4th ed.2004) (internal quotation marks omitted).

{13} The reasoning and holding of *Olson* is applicable to a hotel room. In *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), the Supreme Court held that a defendant had standing to challenge the search of his hotel room. *Id.* at 490, 84 S.Ct. 889. We have also held on two prior occasions that a motel room is the equivalent of a dwelling for Fourth Amendment purposes and that as a registered guest, the occupant is "entitled to the same rights he would have possessed had his private residence been searched rather than his hotel room." *Esguerra,* 113 N.M. at 313–14, 825 P.2d at 246–47; *accord State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App. 1986). Moreover, houseguests who do not stay overnight but nonetheless are permitted by the owner or occupant of the property to use a private part of the residence have standing to challenge a search of the premises. *State v. Wright,* 119 N.M. 559, 563, 893 P.2d 455, 459 (Ct.App.1995); *see also Leyba,* 1997–NMCA–023, ¶ 17, 123 N.M. 159, 935 P.2d 1171 (stating a person may have standing "if he is a houseguest on the searched premises with the owner's permission and has a possessory interest in an item seized there").

{14} The foregoing authorities lead to the inescapable conclusion that Defendant's subjective expectation of privacy in the motel room is one that society is prepared to recognize as reasonable in this case. *See United States v. Wilson,* 36 F.3d 1298, 1303 (5th Cir.1994) (stating defendant had standing to contest search and seizure of checkbook from his friend's hotel room in which defendant was staying as an overnight guest). We hold that Defendant has standing to assert that the search of the motel room violated his rights under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution under the circumstances present here.

**B. The Protective Sweep**

{15} The search of the bathroom was conducted by Officer Melton without a search warrant.

Once a defendant has established that law enforcement officers have entered the premises of another and conducted a warrantless search and seizure in an area wherein the defendant has a reasonable expectation of privacy, the state has the burden of coming forward with evidence to show that the search and seizure came within a valid exception to the search warrant requirements imposed by the State and United States Constitutions.

*Wright,* 119 N.M. at 562, 893 P.2d at 458. The State has a heavy burden to justify a warrantless search. *Id.* A properly justified and conducted protective sweep is a permissible warrantless search under the Fourth Amendment. *State v. Valdez,* 111 N.M. 438, 440, 806 P.2d 578, 580 (Ct.App.1990).

{16} We assume that the evidence supports a finding that the police officers entered the motel room after securing a valid consent from Hernandez to do so. *See Wright,* 119 N.M. at 562, 893 P.2d at 458 ("Where the state asserts that the search and seizure conducted by law enforcement officers were consensual, the burden is on the state to show by clear and positive evidence that consent was given without duress, coercion, or other factors which would vitiate the voluntary nature of the consent.") (internal quotation marks and citation omitted).

We also assume that the protective sweep was performed after Defendant and the others inside the room were arrested. *See Valdez,* 111 N.M. at 440, 806 P.2d at 580 ("A protective sweep is only allowed incident to a lawful arrest."). Finally, we assume that under the circumstances, a protective sweep search was appropriate. *See id.* ("[A] protective sweep may be undertaken if the searching officers possess a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[s] the officer in believing that the area swept harbored an individual posing a danger to the officer or others.") (citations omitted) (quoting *Maryland v. Buie,* 494 U.S. 325, 328, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)). What we determine is whether the scope of the search conducted by Officer Melton was within the constitutional parameters of a protective sweep. Defendant argues that the scope of Officer Melton's protective sweep of the bathroom, exceeded "a cursory inspection of those spaces where a person may be found." *Id.* at 335, 110 S.Ct. 1093. We agree.

{17} In *Buie,* the Supreme Court recognized a protective sweep as an exception to the warrant requirement of the Fourth Amendment. 494 U.S. at 336, 110 S.Ct. 1093. In doing so, it described a protective sweep as, "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327, 110 S.Ct. 1093. The Supreme Court emphasized that the police officer must have a "reasonable belief" that "the area swept harbored an individual posing a danger to the officer or others," *id.* and that a protective sweep is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335, 110 S.Ct. 1093. These limiting parameters on a protective sweep have been recognized and followed by our own Supreme Court. *State v. Jacobs,* 2000–NMSC–026, ¶ 35, 129 N.M. 448, 10 P.3d 127. If the police do not conduct a protective sweep commensurate with the rationale that excludes such a

search from the warrant requirement, the search violates the Fourth Amendment, and it is unconstitutional. *See State v. Nemeth,* 2001–NMCA–029, ¶ 38, 130 N.M. 261, 23 P.3d 936 (stating that entry into home to perform community caretaking function must be suitably circumscribed to serve the exigency which prompted the entry); *State v. Ledbetter,* 88 N.M. 344, 346, 540 P.2d 824, 825 (Ct.App.1975) ("The scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement.").

{18} Sergeant Depies testified that Officer Melton's role was to determine if any other people were in the motel room that could pose a threat to the officers' safety. However, Officer Melton's testimony shows he was looking for evidence, not people. After entering the bathroom, Officer Melton proceeded to look outside the open window to determine if there was any *evidence* outside the window. Then, seeing "just a light plastic bag" inside the partially opened medicine cabinet, Officer Melton decided to look inside the medicine cabinet. A drawing and photographs of the motel room and bathroom show a traditional medicine cabinet hanging over the sink. It has a mirror on the door which opens to a small storage space for personal toiletries. It is obvious by looking at the medicine cabinet that it is too small for a person to hide inside it. Nevertheless, Officer Melton decided to look inside it because, "[s]everal times that I arrested people I have found narcotics in plastic bags." By his own admission, Officer Melton was looking for *evidence* inside the medicine cabinet, not people who might be threats to the officers. Searching inside the medicine cabinet cannot be justified as a protective sweep exception to the warrant requirement of the Fourth Amendment. *Buie,* 494 U.S. at 327, 110 S.Ct. 1093; *see Wilson,* 36 F.3d at 1306 (stating the seizure of a checkbook from a wastebasket in the bathroom of a motel room "was not justified as a protective sweep because it was not within the narrow ambit of a cursory visual inspection of a place where a person could be hiding").

{19} The State argues that the seizure of the plastic bag was proper because it was in plain view while Officer Melton was in the bathroom. We reject this argument. "Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *State v. Ochoa*, 2004–NMSC–023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. The context of the incident, coupled with Officer Melton's experience and training are properly considered in determining whether he identified drug paraphernalia or drug packaging within a reasonable degree of probability sufficient for probable cause. *Id.* ¶¶ 13, 15. In *Ochoa*, the police officer saw a vial protruding from the defendant's pocket while he conducted a protective frisk. He testified he was able to identify it as drug paraphernalia based on his experience. *Id.* ¶¶ 3, 13, 17. In *State v. Miles*, 108 N.M. 556, 557, 775 P.2d 758, 759 (Ct.App.1989), the police officer saw a brown wooden box that was distinctive in appearance lying on the seat in defendant's car after he stopped the defendant for speeding. *Id.* He recognized the box as being drug paraphernalia with a place for a pipe and a compartment for marijuana. *Id.* Again, this was based on his law enforcement experience. *Id.* Here, however, Officer Melton never testified there was anything about the plastic bag when he first saw it which, based upon his law enforcement experience, caused him to believe it was drug paraphernalia or packaging. He only testified that there were times when he made arrests that he found narcotics in plastic bags. This was not sufficient to establish probable cause to open the medicine chest. *See State v. Miyasato*, 805 So.2d 818, 821 (Fla.Dist.Ct.App.2001) ("Even though the officer claimed he saw the corner of a plastic baggie sticking out of [the defendant's] pocket and knew marijuana was often carried in plastic baggies, these facts would give rise to, at most, a mere suspicion that it contained marijuana, which was not enough to seize it.") (internal quotation marks omitted).

{20} All Officer Melton saw before he opened the medicine cabinet was "a plastic bag, just a light plastic bag." There was no evidence that "a plastic bag, just a light plastic bag" in the medicine cabinet was being used for an illegal purpose. Stated another way, the "incriminating nature" of the plastic bag which Officer Melton saw was not "immediately apparent." *See Commonwealth v. Garcia*, 34 Mass.App.Ct. 645, 614 N.E.2d 1031, 1034 (1993) ("Here there was no evidence from the trooper that there was some characteristic of this baggie itself, that would have indicated it was being used for an illegal purpose."). Officer Melton opened the medicine cabinet on the mere suspicion the plastic bag he saw might contain drugs. "[A]n officer's mere suspicion about an ordinary object, which has common, non-criminal uses, will not support probable cause for its seizure." *Ochoa*, 2004–NMSC–023, ¶ 14, 135 N.M. 781, 93 P.3d 1286. The reasons for this rule are apparent:

> Benign objects such as [plastic bags], spoons, mirrors, and straws are often used in the narcotic trade. To allow police officers, experienced in narcotics investigations, to conduct a warrantless search whenever they observe one of the above items, and nothing more, would permit random searches, which are condemned by the Fourth Amendment[.]

*Garcia*, 614 N.E.2d at 1035.

{21} The search of the medicine cabinet cannot be upheld as a protective sweep. Accordingly, Defendant's motion to suppress the contents of the medicine cabinet and all the fruits of the search of the medicine cabinet should have been granted.

## C. Remaining Issues

{22} We address Defendant's argument that the evidence was insufficient to sustain a conviction for Count 1, trafficking by possession with intent to distribute cocaine; Count 2 for conspiracy to commit trafficking by possession with intent to distribute cocaine; and Count 3, for possession of drug paraphernalia. We do so because Defendant would be entitled to a dismissal of these charges if we were to find in his favor on this

issue. *See State v. Santillanes,* 109 N.M. 781, 782, 790 P.2d 1062, 1063 (Ct.App.1990).

{23} In reviewing a claim of insufficiency of the evidence, we determine whether substantial evidence, either direct or circumstantial, exists to support a guilty verdict beyond a reasonable doubt for every essential element of the crimes. *See State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Wildgrube,* 2003–NMCA–108, ¶ 3, 134 N.M. 262, 75 P.3d 862 (internal quotation marks and citation omitted). We review the evidence in the light most favorable to the verdict, and resolve all conflicts in the evidence and indulge all permissible inferences to uphold the conviction. *See State v. Tollardo,* 2003–NMCA–122, ¶ 24, 134 N.M. 430, 77 P.3d 1023; *State v. Phillips,* 2000–NMCA–028, ¶ 7, 128 N.M. 777, 999 P.2d 421.

{24} To convict Defendant of Count 1, trafficking by possession with intent to distribute cocaine, "the State was required to prove that Defendant had the cocaine in [his] possession, was aware that it was cocaine, and intended to transfer it to another." *State v. Chandler,* 119 N.M. 727, 730, 895 P.2d 249, 252 (Ct.App.1995); *accord* NMSA 1978, § 30–31–20(A)(3) (1990). Constructive possession is sufficient. *See Phillips,* 2000–NMCA–028, ¶¶ 7–8, 128 N.M. 777, 999 P.2d 421. We have carefully reviewed the evidence, and although no drugs, weapons, or drug paraphernalia were found on Defendant's person, the evidence was sufficient to establish a logical connection between Defendant and the drugs found. *See id.* ¶¶ 8–9 (discussing constructive possession). We agree with the State that the following substantial evidence supports a conviction for trafficking cocaine with intent to distribute: (1) Hernandez's testimony that people came to the door asking for Defendant, (2) the presence of a digital scale and razor blade indicating that cocaine was being cut and weighed for distribution, (3) evidence that a portion of the crack cocaine was ready for sale while another bundle was not yet cut in the bathroom, (4) Defendant's presence in the bathroom area, and (5) the testimony of one of the detectives that the quantity seized and the drug paraphernalia were consistent with trafficking. *See State v. Muniz,* 110 N.M. 799, 800, 800 P.2d 734, 735 (Ct.App. 1990) (showing evidence sufficient to find the defendant guilty of intent to distribute).

{25} Defendant argues that the evidence was insufficient to support his conviction for conspiracy to commit trafficking by possession with intent to distribute cocaine as charged in Count 2 because the evidence does not support a finding of who the alleged co-conspirator was. Again, we disagree. The question here is whether the circumstances, taken together, show that Defendant and another party united to accomplish an illegal scheme. *See State v. Hernandez,* 1997–NMCA–006, ¶ 41, 122 N.M. 809, 932 P.2d 499. The agreement is generally a matter of inference from the facts and circumstances of the case. *See State v. Reyes,* 2002–NMSC–024, ¶ 20, 132 N.M. 576, 52 P.3d 948.

{26} Based upon the evidence, the jury could properly conclude that a conspiracy agreement was reached between Defendant and Hernandez. The agreement involved the use of Room 244 to sell cocaine and that Hernandez would guard the door and allow entry to those persons seeking out Defendant to purchase crack cocaine.

{27} Finally, we conclude that the evidence was sufficient to support a conviction for possession of drug paraphernalia as charged in Count 3. The drug paraphernalia consisted of the digital scale found in the search of the motel room. "Proof of possession may be established by evidence of the conduct and actions of a defendant, and by circumstantial evidence connecting defendant with the crime." *State v. Donaldson,* 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct.App. 1983) (citation omitted). Sufficient circumstantial evidence connects Defendant with possession of the digital scale in the motel room.

{28} The remaining issues raised by Defendant may or may not arise on the retrial. We therefore do not consider them. *See State v. Herrod,* 84 N.M. 418, 420, 504 P.2d

310

26, 28 (Ct.App.1972) ("Appellate courts do not give advisory opinions.")

### D. Conclusion

{29} The cause is remanded to the district court for a new trial excluding the unlawfully obtained evidence.

{30} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.