This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

     Plaintiff-Appellee,

v.                               **NO.  29,226**

**LEROY MAYFIELD**,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

**INTRODUCTION**

Defendant pleaded guilty to possession of drugs and drug paraphernalia, reserving the right to appeal the denial of his motion to suppress evidence. We affirm.

**STANDARD OF REVIEW**

On appeal from a trial court's ruling on a motion to suppress, findings of fact are reviewed to determine if they are supported by substantial evidence, and legal conclusions are reviewed de novo. *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. "[A]ll reasonable inferences in support of the [district] court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (alterations in original) (internal quotation marks and citation omitted).

**BACKGROUND**

Defendant's motion to suppress relates to the initial part of his contact with the arresting officer. At about 1:35 a.m., the officer observed Defendant walking on 9th Street in Clovis not engaging in any illegal activity. The officer continued driving a short distance, then made a u-turn, stopped his patrol car next to Defendant, and turned his spotlight on Defendant. The officer testified that he got out of the patrol car and said "hello," and Defendant turned around and acknowledged him. The officer introduced himself and asked Defendant if he would talk to him. He asked Defendant where he was going, and Defendant replied that he was headed home.

While talking to Defendant, the officer noticed a small piece of plastic hanging out of Defendant's stocking cap. The officer described the plastic as appearing to be a corner of a baggie with a white residue on it. The officer believed the baggie might contain drugs, so he asked Defendant if he had any narcotics on him. Defendant said he did not. The officer asked Defendant to take off the hat and to shake it out, upon which a yellow, whitish substance fell out, which the officer believed to be crack cocaine. The substance later tested positive for cocaine.

**DISCUSSION**

Not all police-citizen encounters are seizures subject to the Fourth Amendment. *See State v. Javier M.*, 2001-NMSC-030, ¶ 36, 131 N.M. 1, 33 P.3d 1. "[A] police officer may approach an individual, ask questions, and request identification without the encounter becoming a seizure under the Fourth Amendment." *State v. Walters*, 1997-NMCA-013, ¶ 18, 123 N.M. 88, 934 P.2d 282. "The test for determining if a police-citizen encounter is consensual depends on whether, under the totality of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* ¶ 12 (internal quotation marks and citation omitted). "Possible indicators of a seizure are: the threatening presence of several officers, the display of a weapon by an officer, some physical

touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Garcia*, 2009-NMSC-046, ¶ 39, 147 N.M. 134, 217 P.3d 1032 (internal quotation marks and citation omitted).

Defendant relies in part on *State v. Soto*, 2008-NMCA-032, 143 N.M. 631, 179 P.3d 1239, *cert. quashed*, 2009-NMCERT-005, 146 N.M. 728, 214 P.3d 793. In *Soto*, a patrol car with two officers pulled up next to the defendant's bicycle at about 2:30 a.m. *Id.* ¶¶ 2-3. The officers began questioning the defendant about his activities, asked for his identification, and retained it to check for warrants. *Id.* This Court concluded:

> In addition to the assertion of authority evidenced by the patrol car pulling up next to [the d]efendant, the officers then began questioning [the d]efendant about his activities, asked [the d]efendant for identification, and retained [the d]efendant's driver's license in order to run a warrant check, all of which, in combination with the lateness of the hour and [the d]efendant's isolation on the road, conveyed to [the d]efendant that the officers expected [the d]efendant to comply with their requests. A reasonable person under the circumstances would not feel free to disregard the officers or terminate the encounter.

*Id.* ¶ 13 (internal quotation marks and citations omitted).

The facts of *Soto* bear both similarities to and differences from the present facts. The similarities include the patrol car pulling up to the defendant, the lateness of the hour, the defendant's isolation on the road, and the questioning of the defendant about

4

his activities. The differences include the presence of two officers in *Soto*, the officers' immediate questioning of Soto, the officers' asking for Soto's identification, and their retention of it to check for warrants. In the present setting, there was only one officer. The officer introduced himself and asked if Defendant would talk to him and did not request Defendant's identification prior to the time he had reasonable suspicion that Defendant possessed drugs. Other potentially significant factors in the present case include the officer's shining the spotlight on Defendant. *Soto* does not address lighting except to state that the officers did not turn on their lights in the course of pulling up alongside the defendant. *Id.* ¶ 3. In the present case, the officer drove up the street a short distance after first seeing Defendant and then made a U-turn back to Defendant's location. *Soto* does not describe the manner in which the patrol car approached the defendant. Making a U-turn to approach a pedestrian, however, suggests a more deliberate decision on the part of an officer to speak to the person than would an approach where the officer's original path brought the officer alongside the pedestrian.

We reject Defendant's argument that the officer's noticing the piece of plastic sticking out of Defendant's hat did not provide reasonable suspicion for an investigatory detention. The officer, upon noticing the plastic, considered this unusual and asked Defendant about it, upon which Defendant reached up and grabbed it out

of the hat and the officer observed it in Defendant's hand. Because of the way the baggie was cut and because it had a foggy residue on it, it was reasonable for the officer, based on his experience, to suspect it contained drugs. *See State v. Zamora*, 2005-NMCA-039, ¶ 19, 137 N.M. 301, 110 P.3d 517 (holding that the officer's observation of a plastic bag in a partly open medicine cabinet did not provide probable cause to seize it, but recognizing that it might have given the officer reasonable suspicion to investigate further). After Defendant grabbed the baggie, the officer asked him to take off and shake out the hat, upon which the drugs fell out.

Two factors are central to our conclusion that the officer's encounter with Defendant was consensual at the relevant time. First, the officer noticed the plastic hanging from Defendant's cap very early in the encounter. Apparently, the only questioning that had occurred up to that point involved where Defendant was going, to which Defendant responded that he was headed home. Upon seeing the plastic and noticing that it appeared to be the type of baggie used to hold drugs, the officer had reasonable suspicion that Defendant was in possession of drugs and was entitled to question Defendant further about it. "Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *Jason L.*, 2000-NMSC-018, ¶ 20 (internal quotation marks and citation omitted). The encounter simply did not progress far enough before the discovery of the plastic bag to allow time for the officer to have asked for Defendant's

6

identification and retained it to check for warrants, or made any other show of authority, had the officer intended to do so.

The second factor in our conclusion that the officer's encounter with Defendant was consensual is that it is difficult to conceive of ways in which the officer's initial contact could have been any less of a show of authority than it was, given that certain intrinsic aspects of the encounter inherently suggested a show of authority to some degree. Leaving aside any speculation as to the officer's subjective motive in deciding to initiate contact with Defendant, the officer could not readily change or ameliorate certain factors that existed in the circumstances. For example, it was very early morning, Defendant was alone on the street, and the officer was driving a patrol car. Whatever show of authority is inherent in an officer in a patrol car approaching a person in predawn darkness could not realistically be reduced. Similarly, given that it was dark, the officer's use of the patrol car spotlight to illuminate the scene may well have been perfectly reasonable. To suggest that this officer should have or could have done something differently, other than to not initiate contact at all, would essentially eliminate officers' ability to consensually speak to citizens who are out and about at a late hour.

Defendant also argues that suppression is required under Article II, Section 10 of the New Mexico Constitution. We conclude that no issue has been preserved under Article II, Section 10. Where a defendant argues that the New Mexico Constitution

provides more protection than the Fourth Amendment, the issue is preserved as follows:

> If established precedent construes the provision to provide more protection than its federal counterpart, the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue.

*State v. Gomez*, 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1; *see State v. Leyva*, ___-NMSC-___, ¶ 38, ___ N.M. ___, ___ P.3d ___ (No. 32,067, Feb. 17, 2011) (concluding that the *Gomez* rule is sound).

Defendant's motion to suppress correctly noted that the New Mexico Constitution affords its citizens greater protections than the federal constitution. He did not, however, either assert the principle that provides the protection sought under the New Mexico Constitution, or assert reasons in the trial court as to why the state provision should be interpreted differently from the federal provision. The example Defendant cites, *Garcia*, 2009-NMSC-046, is inapplicable to his case, as there is no issue regarding the point at which he submitted to authority. *See id.* ¶ 37 (holding that a seizure occurs when a reasonable person would not feel free to leave, not when a person actually submits to authority).

**CONCLUSION**

For the reasons set forth herein, we affirm the district court's denial of Defendant's motion to suppress the evidence.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**