This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37616**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAMES TYRONE MANNING,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James W. Counts, District Judge**

Hector H. Balderas, Attorney General
Eran S. Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Defendant James Tyrone Manning appeals from his convictions following a jury trial of trafficking methamphetamine (by distribution), contrary to NMSA 1978, Section 30-31-20(A)(2)(c) (2006), and conspiracy to commit trafficking methamphetamine (by distribution), contrary to Section 30-31-20(A)(2)(c) and NMSA 1978, Section 30-28-2 (1979). Defendant challenges the sufficiency of the evidence supporting his convictions as well as the sentence enhancement for his drug trafficking conviction. For the reasons

that follow, we affirm but remand to the district court to correct typographical errors in the judgment and sentence.

## BACKGROUND

**{2}** Deputy Calib Bruce, an undercover narcotics agent with the Otero County Sheriff's Office, arranged a meeting with Defendant to buy methamphetamine from him. On December 9, 2015, Deputy Bruce met Defendant at an Alamogordo gas station to purchase methamphetamine. When Defendant arrived at the gas station, he got into Deputy Bruce's unmarked truck and handed him a plastic baggie with a white crystal-like substance. Deputy Bruce gave Defendant $100 in exchange for the drugs. After the exchange, Defendant got out of Deputy Bruce's truck, walked over to a black Dodge Charger, and got into the rear passenger seat. During the exchange, Agent Chad Webb, a member of Deputy Bruce's team, took photographs of Defendant and the vehicle he entered after he sold Deputy Bruce the methamphetamine.

**{3}** After the purchase, Deputy Bruce went back to the police station where he reviewed Agent Webb's photographs and identified Defendant. The substance that Defendant sold Deputy Bruce tested positive for methamphetamine and had an approximate weight of 1.26 grams.

**{4}** On December 16, 2015, Deputy Bruce sent a text message to Defendant to purchase more methamphetamine. Deputy Bruce and Defendant exchanged multiple text messages and at least one phone call to arrange the purchase. This time Defendant arranged for his "girl" to meet Deputy Bruce to sell him more methamphetamine. Deputy Bruce later identified Defendant's "girl" from previous narcotics investigations as Caresse Stanfill. When he arrived to meet Ms. Stanfill, Deputy Bruce observed the same Dodge Charger in which he had previously seen Defendant, parked at a gas pump. Ms. Stanfill got out of the Dodge Charger, got into Deputy Bruce's unmarked truck, and sold Deputy Bruce $50 worth of methamphetamine. The drugs Deputy Bruce purchased from Ms. Stanfill also tested positive for methamphetamine and had an approximate weight of 0.37 grams. Following the drug transaction with Ms. Stanfill, Defendant was arrested and charged with trafficking a controlled substance and conspiracy to commit trafficking a controlled substance.

**{5}** Defendant was convicted by a jury of trafficking methamphetamine and conspiracy. The State then filed a supplemental criminal information and brief in support seeking to enhance Defendant's sentence to a first degree felony for committing a second trafficking offense, pursuant to Section 30-31-20(B)(2). At sentencing, based on Defendant's previous conviction for possession of methamphetamine with intent to distribute under NMSA 1978, Section 30-31-22(A)(2)(a) (1990, amended 2011), the district court determined that this was Defendant's second trafficking conviction and enhanced his sentence from a second degree felony to a first degree felony. Defendant was sentenced to nineteen years in prison.

**DISCUSSION**

**I.      Substantial Evidence Supports Defendant's Convictions**

**{6}**      Defendant argues that the State did not present sufficient evidence at trial to prove, beyond a reasonable doubt, each element of the offenses charged. Specifically, with regard to the trafficking by distribution charge, Defendant argues that the evidence was insufficient because there was no physical evidence presented to tie Defendant to the transaction. With regard to the conspiracy charge, Defendant argues that because (1) Deputy Bruce did not observe any communication between Ms. Stanfill and himself; (2) Deputy Bruce did not observe Defendant at the second drug transaction; and (3) there was no physical evidence to tie him to the transaction, his conspiracy conviction should be reversed.

**A.      Standard of Review**

**{7}**      "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, appellate courts "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (internal quotation marks and citation omitted). We also disregard all evidence and inferences that support a different result. *State v. Rojo,* 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before the reviewing court is not whether [it] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alterations, internal quotation marks, and citation omitted). Lastly, we note that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alteration, internal quotation marks, and citation omitted).

**B.      Substantial Evidence Supported Defendant's Conviction for Trafficking Methamphetamine**

**{8}**      To establish Defendant's guilt of trafficking methamphetamine by distribution, the State was required to prove, beyond a reasonable doubt, that (1) "[D]efendant transferred or caused the transfer of methamphetamine to another"; (2) "[D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some other drug or other substance the possession of which is regulated or prohibited by law"; and (3) the events transpired in New Mexico on or about December 9, 2015. *See* UJI 14-3110 NMRA.

**{9}** Deputy Bruce testified that he was working as an undercover narcotics agent when he arranged a meeting with Defendant at a gas station to purchase methamphetamine on December 9, 2015. When Defendant arrived at the gas station, he got into Deputy Bruce's unmarked truck and handed Deputy Bruce a plastic baggie with a white, crystal-like substance. Deputy Bruce paid Defendant $100 for the baggie. During this exchange, Deputy Bruce recorded the conversations with Defendant and the State admitted the audio recording into evidence at trial. Following the transaction, Deputy Bruce returned to the police station where he identified Defendant in a photograph lineup. Agent Webb testified that he worked on Deputy Bruce's team during the December 9 exchange with Defendant and took photographs of the vehicle and of Defendant. A forensic scientist, Cheryl Serena, analyzed the drugs and testified that the white crystal-like substance that Defendant sold Deputy Bruce tested positive for methamphetamine. Both the photographs and laboratory report were published to the jury. Based on the foregoing, we conclude that substantial evidence supported Defendant's conviction for trafficking methamphetamine.

## C. Substantial Evidence Supported Defendant's Conviction of Conspiracy to Traffic Methamphetamine

**{10}** To establish that Defendant was guilty of conspiracy to traffic methamphetamine, the State had to prove, beyond a reasonable doubt, that (1) "[D]efendant and another person by words or acts agreed together to commit trafficking a controlled substance by distribution"; (2) "[D]efendant and the other person intended to commit trafficking a controlled substance by distribution"; and (3) the events transpired in New Mexico on or about December 16, 2015. *See* UJI 14-2810 NMRA; *State v. Hernandez*, 1997-NMCA-006, ¶ 41, 122 N.M. 809, 932 P.2d 499 ("[T]he [s]tate ha[s] the burden to prove [the d]efendant agreed with someone to commit the underlying offense and intended to commit the underlying offense."). We note that conspiracy is rarely proven by means of direct evidence; thus, circumstantial evidence is sufficient to support a conspiracy conviction. *See State v. Johnston*, 1982-NMCA-083, ¶ 13, 98 N.M. 92, 645 P.2d 448 ("The gist of conspiracy is the agreement, and such agreements are rarely susceptible of direct proof. Consequently, circumstantial evidence is sufficient to support a conspiracy conviction."). Accordingly, we must determine "whether the circumstances, taken together, show that [the d]efendant and another party united to accomplish an illegal scheme." *State v. Zamora*, 2005-NMCA-039, ¶ 25, 137 N.M. 301, 110 P.3d 517.

**{11}** The jury was presented evidence of the following circumstances: Approximately a week after the first exchange, on December 16, 2015, Deputy Bruce sent a text message to Defendant at the same phone number he had used to reach Defendant in the past to purchase more methamphetamine. There were multiple text messages and at least one phone call between Deputy Bruce and Defendant regarding the purchase. Defendant told Deputy Bruce that he had arranged for Ms. Stanfill to meet Deputy Bruce to sell him more methamphetamine. When Deputy Bruce arrived at the gas station to meet Ms. Stanfill, he saw the same Dodge Charger that Defendant got into after the drug exchange on December 9. Ms. Stanfill got out of the Dodge Charger and into Deputy Bruce's truck and sold $50 worth of methamphetamine to him. The State's

forensic scientist testified that the drugs from this second transaction tested positive for methamphetamine. The jury also received this laboratory report. The conversations between Deputy Bruce and Defendant arranging the second transaction and the audio recording from the transaction between Deputy Bruce and Ms. Stanfill were both published to the jury.

**{12}** Based on the foregoing evidence, the jury could reasonably conclude that Defendant and Ms. Stanfill were working together to sell methamphetamine. *See State v. Catt*, 2019-NMCA-013, ¶ 45, 435 P.3d 1255 (relying on circumstantial evidence to conclude that sufficient evidence supported the defendant's conviction for conspiracy to commit trafficking methamphetamine). To the extent that Defendant asserts that more compelling or unequivocal evidence should have been required, we disagree. *See State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 ("So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, [appellate courts] will not upset a jury's conclusions." (internal quotation marks and citation omitted)). Therefore, we conclude substantial evidence supported Defendant's conviction for conspiracy to traffic methamphetamine.

## II. Defendant's Sentence Was Properly Enhanced

**{13}** Defendant asserts that the district court erred in enhancing his sentence under Section 30-31-20(B)(2). Defendant argues that because he was convicted under an entirely different statute, it was improper for his sentence to be enhanced. Defendant furthers argues that the enhancement of his sentence by the district court from a second degree felony to a first degree felony violates his rights under the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution.

**{14}** "The application and interpretation of law is subject to a de novo review." *State v. Ochoa*, 2008-NMSC-023, ¶ 10, 143 N.M. 749, 182 P.3d 130. "In New Mexico, the court's sentencing authority is limited by statute [, and t]he [L]egislature must give express authorization for a sentence to be imposed." *State v. Lacey*, 2002-NMCA-032, ¶ 5, 131 N.M. 684, 41 P.3d 952 (citation omitted). When interpreting a statute, we seek to give effect to the Legislature's intent and do so by looking first to the plain meaning of the statute's language. *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "[W]hen a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.*

**{15}** In addressing Defendant's first argument—that his sentence cannot be enhanced because his prior conviction was under a different statute—the parties focus their arguments on the applicability of *State v. Garduno*, 1979-NMSC-072, 93 N.M. 335, 600 P.2d 281. In *Garduno*, the defendant "was convicted of two counts of trafficking . . . a controlled substance contrary to [Section] 30-31-20(A)." *Garduno*, 1979-NMSC-072, ¶ 2. Based on his prior federal conviction for possession with intent to distribute a controlled substance, contrary to 21 U.S.C. § 841 (1976), the district court enhanced the defendant's sentence for his violations of Section 30-31-20(A), pursuant to Section 30-31-20(B)(2). *Garduno*, 1979-NMSC-072, ¶ 2. On appeal, the defendant contended "that

'second and subsequent offense' mean[t] a second or subsequent violation of [Section] 30-31-20, and that a federal offense cannot be used to increase the penalty for the state offense." *Garduno*, 1979-NMSC-072, ¶ 5.

**{16}** Our Supreme Court was not persuaded, noting that the statute "merely refers to 'second and subsequent offenses' " and "does not specify that the prior offense must have been committed in New Mexico or prosecuted under [the New Mexico Controlled Substances] Act." *Id.* Because "[t]he statutes proscribe the same acts and require the same knowledge or intent" and "[t]he elements necessary to prove the federal offense were the same as those required to prove the state charges[,]" our Supreme Court concluded that "[t]he federal offense was a prior conviction for purposes of the penalty provisions of . . . [Section] 30-31-20(B)(2)." *Garduno*, 1979-NMSC-072, ¶¶ 6-7. Accordingly, our Supreme Court affirmed the district court's enhancement of the defendant's sentence. *Id.* ¶ 8.

**{17}** Before we address *Garduno*'s applicability to this case, we take a moment to comment on a discrepancy in the record proper and the parties' arguments to this Court. It is clear from the record that Defendant in this case was indicted, tried, and convicted for the offense of trafficking by distribution, contrary to Section 30-31-20(A)(2)(c). In its judgment and sentence, the district court correctly refers to Defendant's conviction as trafficking by distribution. However, the district court cites Section 30-31-20(A)(3), which relates to trafficking by possession with intent to distribute, when identifying the subsection under which Defendant was convicted.[1] Because it is clear that Defendant was convicted for trafficking by distribution in this case, the district court on remand shall correct its judgment and sentence to reflect that Defendant was convicted under Section 30-31-20(A)(2)(c). Like the district court in its judgment and sentence, Defendant and the State also premise their arguments in this appeal on a conviction under Section 30-31-20(A)(3). The crimes of trafficking by distribution and trafficking by possession with intent to distribute, however, require proof of different elements, making the parties' briefing unhelpful to our analysis. *Compare* UJI 14-3110 (identifying the elements of trafficking by distribution), *with* UJI 14-3111 NMRA (identifying the elements of trafficking by possession with intent to distribute).

**{18}** Turning back to the applicability of *Garduno*, we begin by setting forth the elements required to convict Defendant for the crimes of trafficking by distribution, contrary to Section 30-31-20(A)(2)(c), and possession with intent to distribute, contrary to Section 30-31-22(A)(2)(a). To convict Defendant for trafficking by distribution in this case, the State had to prove, in relevant part, the following elements beyond a reasonable doubt: (1) "[D]efendant transferred or caused the transfer of methamphetamine to another"; and (2) "[D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some drug or other substance

---

[1] While not consequential to our review, we identified two other errors in the judgment and sentence that should also be corrected on remand. First, the conspiracy count is listed as being charged in Count 1 of the grand jury indictment. This should be corrected to reflect that it was Count 2 of the grand jury indictment. Second, the conspiracy count omits citation to the conspiracy statute. This should be corrected to reflect that the conviction was also contrary to Section 30-28-2.

the possession of which is regulated or prohibited by law." UJI 14-3110. In addition to those elements, the State also had to prove, beyond a reasonable doubt, that Defendant acted intentionally when committing the crime. UJI 14-141 NMRA. For Defendant's prior conviction for possession with intent to distribute methamphetamine, the state had to prove, in relevant part, the following elements beyond a reasonable doubt: (1) "[D]efendant had methamphetamine in his possession"; (2) "[D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law"; and (3) "[D]efendant intended to transfer it to another." UJI 14-3104 NMRA. Unlike the elements of the statutes at issue in *Garduno*, we cannot say that the elements of the statutes involved in this case are the same. However, as we explain next, these statutes proscribe the same acts because they require the same knowledge and intent.

**{19}** Both Defendant's conviction under Section 30-31-20(A)(2)(c) and his conviction under Section 30-31-22(A)(2)(a) (1990) required the State to prove that Defendant knew or believed the substance that he intended to distribute was methamphetamine or another drug or substance that is regulated or prohibited by law. Both convictions also required the State to prove Defendant, with that knowledge, intended to transfer the substance. The only difference between the crimes was whether Defendant actually completed or caused the transfer of the substance. On this basis, we conclude that Defendant's prior conviction under Section 30-31-22(A)(2)(a) (1990) was a prior offense for sentence enhancement purposes under Section 30-31-20(B)(2). *See Garduno*, 1979-NMSC-072, ¶ 6. Accordingly, we affirm the district court's enhancement of Defendant's sentence.

**{20}** Nevertheless, even if *Garduno* was not applicable here, we would still conclude that Defendant's sentence enhancement was proper for the following reasons. Section 30-31-20(B) makes it "unlawful for a person to intentionally traffic." Trafficking can be accomplished by manufacture, distribution, or possession with intent to distribute. Section 30-31-20(A)(1)-(3). Under Section 30-31-20(B)(2), a person's second and subsequent offense for unlawfully trafficking results in a sentence enhancement. Section 30-31-20(B)(2) does not require that the person's subsequent offense be of the same type of trafficking as their previous offense to enhance that person's sentence.

**{21}** As we explained in our memorandum opinion addressing Defendant's appeal in a different case, Defendant's previous conviction under Section 30-31-22(A)(2)(a) (1990) required proof of the same elements as his conviction in that case under Section 30-31-20(A)(3)(c). *State v. Manning*, No. A-1-CA-37615, memo. op. ¶ 28 (N.M. Ct. App. Apr. 29, 2020) (non-precedential). Therefore, applying *Garduno*, we concluded that Defendant's conviction under 30-31-22(A)(2)(a) (1990) was a prior offense for the purposes of Section 30-31-20(B)(2). *Manning*, No. A-1-CA-37615, memo. op. ¶ 28. Accordingly, we affirmed the district court's enhancement of Defendant's sentence. *Id.*

**{22}** Because Section 30-31-20(B)(2) does not require the subsequent trafficking offense to be of the same type of trafficking as the prior offense, we reach the same conclusion here—Defendant's conviction under Section 30-31-22(A)(2)(a) (1990) is a

prior offense for the purposes of Section 30-31-20(B)(2). Thus, we also affirm the district court's sentence enhancement in this case on this basis.[2]

**{23}**   Next, we address Defendant's argument that the internal enhancement of his conviction from a second degree felony to a first degree felony violates his rights under the Eight Amendment and Article II, Section 13 of the New Mexico Constitution to be free of cruel and unusual punishment. In New Mexico, our Supreme Court has "(1) recognized that the length of a sentence is a legislative prerogative, and (2) absent a compelling reason, the judiciary shall not impose its own views concerning the appropriate punishment for crimes." *State v. Harris*, 1984-NMCA-003, ¶ 50, 101 N.M. 12, 677 P.2d 625. Additionally, New Mexico case law demonstrates that "it is an exceedingly rare case where a term of incarceration, which has been authorized by the Legislature, will be found to be excessively long or inherently cruel." *State v. Augustus*, 1981-NMCA-118, ¶ 8, 97 N.M. 100, 637 P.2d 50. Defendant was convicted of trafficking methamphetamine in the first degree for a second offense. The sentence he received was twice as long as that of a first offense because the judge imposed the lawful and statutorily mandated sentence. A review of the legislative intent of New Mexico's Controlled Substance Act reveals the intent for repeat offenders to serve longer sentences than first time offenders. Therefore, we are not persuaded that Defendant's sentence enhancement and resulting period of incarceration was cruel or unusual or a violation of his state or federal constitutional rights.

## CONCLUSION

**{24}**   For the reasons discussed above, we conclude that substantial evidence supported Defendant's trafficking and conspiracy to traffic convictions and the district court did not err in enhancing Defendant's sentence. Accordingly, we affirm. However, we remand to the district court to correct the errors in the judgment and sentence that we have identified in this opinion.

**{25}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

---

2In his briefing, Defendant notes that trial counsel attempted to distinguish *Garduno* on notice grounds, specifically that he "was never put on notice that a future trafficking conviction would result in a first-degree felony conviction." It is not clear whether Defendant is also arguing that we should distinguish *Garduno* on those grounds in this appeal. To the extent that Defendant is making that argument, we decline to address it because his argument is undeveloped and is not supported by citation to authority. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists.").

**SHAMMARA H. HENDERSON, Judge**